UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALPINE STRAIGHTENING SYSTEMS, et
al.,

     Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

     Defendants.

Case No:  6:14-cv-6003-Orl-31TBS
MDL Case No:  6:14-md-2557-GAP-TBS

## REPORT AND RECOMMENDATION

Pending before me, on referral from the presiding district judge, are Defendants'
motions to dismiss (Docs. 14, 45, 51, 54, 70, 71, 82, 88).   I find that two of these motions
(Docs. 45, 51) should be **DENIED as moot**, because they were superseded by motions
filed by the same Defendants (see Docs. 70, 71).   Upon due consideration I respectfully
recommend that the remaining motions be **GRANTED** and Plaintiffs' First Amended
Complaint (Doc. 13, hereinafter "FAC") be dismissed, with prejudice as to Count II (quasi-
estoppel) and without prejudice as to the other counts.

### I. Background

Plaintiffs are nine Utah auto body repair shops and Defendants are 19 insurance
companies that write automobile insurance in the state of Utah (FAC, ¶¶ 1-28).   Plaintiffs
allege that Defendants conspired to fix prices and boycott Plaintiffs in violation of § 1 of
the Sherman Act, 15 U.S.C. § 1 (Id., ¶¶ 124-43).   They also assert claims for damages
based upon quantum meruit, quasi-estoppel, tortious interference with economic
relations, and conversion (Id., ¶¶ 98-123).   The allegations in this case are similar to the

allegations made by the plaintiffs in A&E Auto Body, Inc. v. 21st Century Centennial

Insurance Co., No. 6:14-cv-00310-Orl-31TBS, which the Court summarized in its Order

granting the motions to dismiss in that case:

> The Defendants in this case are alleged to "exert control" over the Plaintiffs' businesses (and the hourly rates paid by the Defendants) in a number of ways, beginning with agreements generally referred to as "direct repair programs" or "DRPs". To participate in a particular insurer's DRP, a repair shop typically agrees to certain concessions in regard to such things as the prices it will charge and the priority given to vehicles owned by people who have insurance through that insurer.   In exchange, the repair shop is listed as a "preferred provider".   However, the Plaintiffs complain that the prices that they were permitted to charge under the DRPs were unfairly manipulated, that even repair shops that were not participating in DRPs were restricted to those price ceilings, and that repair shops that complained about these practices or tried to charge higher prices faced intimidation and boycotts from the insurers.
>
> As a general proposition, each DRP contains language obligating the repair shop to charge the insurance company no more than the "market rate" for repairs in the general area. State Farm Mutual Automobile Insurance Company ("State Farm"), a Defendant in this case, determines this market rate. State Farm surveys the repair shops in a given area, determines the hourly rate charged by each repair technician, and then designates a rate just above the midpoint of all rates charged to be the "market rate."   However, the Plaintiffs complain that State Farm alters the survey results to achieve a "wholly artificial 'market rate'" and uses this artificially lowered result to negotiate price decreases from repair shops.   If a repair shop attempts to raise its hourly rate, State Farm will, among other things, remove it or threaten to remove it from the DRP.
>
> The other Defendants, who do not perform such surveys, "specifically advised the Plaintiffs that they will pay no more than State Farm pays for labor."   The Defendants refuse to pay a higher labor rate even to Plaintiffs who are not participating in a DRP.
>
> The Plaintiffs also allege that the Defendants improperly lowered the amounts that they paid for repairs by, among other things, refusing to pay for replacement parts even where

> the repair shop thought replacement was a better option than repair and by requiring utilization of used parts even where new parts were available.   The Plaintiffs also complain that the Defendants (1) are refusing to abide by the estimates set forth in the industry's leading collision-repair-estimating databases; (2) that they are refusing to pay for certain required materials and practices on the grounds that those items are included in the price of the repair; and (3) that they have imposed arbitrary caps on the amount they are willing to pay for paint as part of a repair.

2015 WL 304048, at *1-2 (M.D. Fla. Jan. 21, 2015).

Plaintiffs filed this lawsuit on April 10, 2014 in the United States District Court for the District of Utah (Doc. 1).   On June 5, before any Defendant had responded to the original complaint, Plaintiffs filed the FAC (Doc. 13).   Several groups of Defendants have moved to dismiss the FAC (Docs. 14, 54, 70, 71; see also Docs. 82, 88).   Plaintiffs have filed responses in opposition to these motions and Defendants have filed replies (Docs. 53, 61, 76-81).

On August 12, 2014, the United States Judicial Panel on Multidistrict Litigation transferred the case to this district for coordinated or consolidated pretrial proceedings before District Judge Gregory A. Presnell.   In re Auto Body Shop Antitrust Litigation, __ F. Supp. 3d. __, 2014 WL 3908000 (J.P.M.L. Aug. 8, 2014).   On November 14, 2014, the Court held a hearing on the motions to dismiss in this and six other related cases (Case No. 6:14-cv-310, Doc. 282).   The Court entered its Order dismissing the amended complaint in the Florida case on January 21, 2015.   A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co., No. 6:14-cv-00310-Orl-31TBS, 2015 WL 304048 (M.D. Fla. Jan. 21, 2015).   On February 27, Judge Presnell referred the pending motions to dismiss in this case to me for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).   A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.   Milbum v. United States, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss, the court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.   SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir.1988). The court must also limit its consideration to the pleadings and any exhibits attached to the pleadings.   FED.R.CIV.P. 10(c); see also GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

A plaintiff must provide enough factual allegations to raise its right to relief above the speculative level, Twombly, 550 U.S. at 555, and to indicate the presence of the required elements, Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal.   Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir.2003).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertions devoid of further

factual enhancement." Id. 678 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the plaintiff is entitled to relief.'" Id. at 679 (quoting FED.R.CIV.P. 8(a) (2)).

### III. Discussion

Count I: Quantum Meruit (Contract Implied in Law, Quasi-Contract, and Unjust Enrichment)

Utah courts recognize "two branches" of "quantum meruit": contract implied in law (also called unjust enrichment or quasi-contract) and contract implied in fact. Emergency Physicians Integrated Care v. Salt Lake County (hereinafter "EPIC"), 2007 UT 72, ¶ 10, 167 P.3d 1080. Plaintiffs' claim is of the first type (See FAC, ¶ 99). "To prove the existence of a contract implied in law, a plaintiff must establish the following: '(1) [T]he defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust to retain the benefit without paying for it.'" EPIC, 2007 UT 72, ¶ 11 (quoting Davies v. Olson, 746 P.2d 264, 269 (Utah App. 1987)) (alterations in original).

Defendants make two principal arguments against Plaintiffs' unjust enrichment claim. First, they contend that Plaintiffs have failed to allege facts sufficient to show that Defendants received a benefit (Doc. 14 at 22; Doc. 54 at 8-9; Doc. 70 at 19; Doc. 71 at 6). Second, they argue that Plaintiffs cannot recover in quantum meruit because they have alleged the existence of contracts between themselves and Defendants (Doc. 14 at 21-22; Doc. 54 at 7-8; Doc. 70 at 17-18; Doc. 71 at 5-6).

The Utah Supreme Court's decision in EPIC saps Defendants' first argument of much of its persuasive force. EPIC arose out of a dispute between Salt Lake County and

a group of emergency physicians who provided services to inmates held by the County over the rates at which the physicians were compensated.   2007 UT 72, ¶¶ 1-7   A trial court dismissed the physicians claim, reasoning that the emergency medical services they provided to inmates was not a "benefit" conferred on the County.   Id., ¶ 11.

The Utah Supreme Court reversed the trial court's dismissal of the physicians' quantum meruit claim.   Id., ¶ 9.   The court held that the physicians "conferred a benefit on the County by providing the means by which [the County] fulfilled its ... obligation," under both the United States Constitution and Utah statutory law, "to provide inmate care."   Id, ¶¶ 13, 22, 23.   The court emphasized that the "benefit" requirement of an unjust enrichment claim must be read broadly, to include "an 'interest in money, land, chattels, or choses in action; beneficial services conferred; satisfaction of a debt or duty owed by [the defendant]; or anything which adds to [the defendant's] security or advantage.'"   Id. ¶ 26 (quoting Baugh v. Darley, 184 P.2d 335, 337 (Utah 1947)).   "For practical purposes," the court explained, "the County outsourced its constitutional duty to [the physicians].   Had it not done so, it would have been required to employ more on-site medical staff or bear increased liability for providing inadequate care.   These are real benefits that are sufficient to establish the first prong of a quantum meruit claim."   Id., ¶ 27.   Rejecting a case handed down by the South Carolina Supreme Court, the court found it immaterial that the prisoners also obtained a benefit from the physicians.   Id., ¶¶ 24-25 (disagreeing with Myrtle Beach Hospital, Inc. v. City of Myrtle Beach, 532 S.E.2d 868, 869 (S.C. 2000)); (cf. Doc. 54 (State Farm's Motion to Dismiss) at 8 (arguing that unjust enrichment claim was not cognizable because repair services "were for the benefit of the car owners insured by Defendants," not for Defendants)).

To be sure, there are differences between this case and <u>EPIC</u>.   The most direct

source of an insurer's duty is the contract with the insured rather than any statutory or

constitutional provision, although insurance contracts are regulated extensively by

statute.   <u>See</u> Utah Code § 31A-22-303 (setting forth requirements for motor vehicle

liability coverage).   But the source of a duty has nothing to do with whether its discharge

benefits the obligor.   Nor should it be relevant that the insurer's duty is to pay for repairs,

rather than to actually make them.   If a shop repaired an insured's or claimant's car and

then gratuitously waived all payment, the insurer would plainly "benefit" from the

transaction, just as a county would benefit if a doctor altruistically disclaimed any right to

compensation after providing lifesaving treatment to an inmate at the county jail, although

in each case there would be no injustice and thus no recovery, <u>see</u> <u>Kershaw v. Tracy</u>

<u>Collins Bank & Trust</u>, 561 P.2d 683 (Utah 1977).   Here, auto body shops, like the doctors

in <u>EPIC</u>, have demanded payment and (allegedly) received less than "reasonable value"

for their services.   What was sufficient to show a "benefit" to the county in <u>EPIC</u> should

be sufficient to show a "benefit" to Defendants in this case.[1]

But, I agree with Defendants' argument that Plaintiffs' allegation that they entered

into DRPs with "Defendants" precludes their quantum meruit claim.   In the Mississippi

case, the Court dismissed a quantum meruit claim without prejudice on this basis, <u>Capitol</u>

<u>Body Shop, Inc. v. State Farm Mutual Automobile Ins. Co.</u>, No. 6:14-cv-6000, Doc. 82 at

---

[1] There are other differences between this case and <u>EPIC</u> that may bear on the second and third elements of a quantum claim, namely, whether Defendants knew of or appreciated the benefit and whether it would be unjust for Defendants to pay less than the "reasonable value" of the services.   For example, body shops have the opportunity to negotiate prices with insurers beforehand, an opportunity that, for obvious reasons, is unavailable to those who provide emergency medical care.   And, while emergency room doctors are required by federal law to provide care to those with emergency medical conditions, 42 U.S.C. § 1395dd; <u>see also</u> <u>EPIC</u>, 2007 UT 72, ¶ 28, body shops are free to refuse to deal with insurers and customers they regard as too stingy.

8 (M.D. Fla. Feb. 9, 2015), report and recommendation adopted, Doc. 83 (Feb. 27, 2015), and I have recommended dismissal of like claims in the Indiana and Tennessee cases for the same reason, Indiana Autobody Association v. State Farm Mutual Automobile Ins. Co., No. 6:14-cv-6001, Doc. 145 at 4-5 (M.D. Fla. Feb. 25, 2015); Brewer Body Shop v. State Farm Mutual Automobile Ins. Co., No. 6:14-cv-6002, Doc. 78 at 5-6 (M.D. Fla. Mar. 2, 2015).   Here, as in those cases, Plaintiffs have alleged that they entered into DRP agreements with "Defendants," which means all of the Defendants (Doc. 1, ¶ 36).[2] Accordingly, I recommend the Court dismiss Count I without prejudice because Plaintiffs' allegations that they have agreements with all of the Defendants precludes any quantum meruit claim.

Count II: Quasi-Estoppel

The Court of Appeals of Utah has explained that "'quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position [it has] previously taken.   The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.'"   In re R.B.F.S., 2012 UT App 132, ¶ 31, 278 P.3d 143 (quoting Bott v. J.F. Shea Co., 299 F.3d 508, 512 (5th Cir. 2002)).

As I explained in my report and recommendation in the Mississippi case, quasi-estoppel "is not a cause of action or independent basis for relief."   Capitol Body Shop, Doc. 82, at 10.   It simply "prevent[s] another party from taking a particular position in litigation."   Id. at 11 (citing T.C.B. Construction Co. v. W.C. Fore Trucking, Inc., 134 So.

---

[2] Plaintiffs make clear in their responses to Defendants' motions that when they use the term "Defendants" in the FAC they mean all of the Defendants (Doc. 53 at 10, Doc. 77 at 5-6).   Cf. Indiana Autobody Association, Doc. 145 at 7; Brewer Body Shop, Doc. 78 at 6 n. 1.

3d 752, 764 (Miss. App. 2012)); see also Brewer Body Shop, Doc. 78 at 7.   Accordingly, I

recommend that the Court dismiss Count II with prejudice.

Count III: Tortious Interference with Economic Relations

To establish a claim for tortious interference with economic relations under Utah

law, a plaintiff must show "'(1) that the defendant intentionally interfered with the plaintiff's

existing or potential economic relations, (2) ... by improper means, (3) causing injury to

the plaintiff.'"   Eldridge v. Johndrow, 2015 UT 21, ¶ 71, __ P.3d __ (quoting Leigh

Furniture & Carpet Co. v. Isom, 657 P.2d 293, 304 (Utah 1982)) (alterations in original).[3]

Several groups of Defendants argue that Plaintiffs have failed to plead facts

showing "improper means" (Doc. 14 at 25; Doc. 54 at 12-13; Doc. 71 at 9).   As the Utah

Supreme Court explained in St. Benedict's Development Co. v. St. Benedict's Hospital,

811 P.2d 194 (Utah 1991):

> Improper means are present "where the means used to
> interfere with a party's economic relations are contrary to law,
> such as violations of statutes, regulations, or recognized
> common-law rules."   Improper means include "violence,
> threats or other intimidation, deceit or misrepresentation,
> bribery, unfounded litigation, defamation, or disparaging
> falsehood."   "Means may also be improper because they
> violate 'an established standard of a trade or profession.'"

Id. at 201 (quoting Leigh Furniture, 657 P.2d at 308).

Plaintiffs allege that "Defendants have employed improper means since steering is

contrary to Utah statutory, regulatory, and/or common laws [sic]" (FAC, ¶ 117).   The

references to unidentified provisions of Utah law are unhelpful, and Plaintiffs should

provide specificity or omit them from any subsequent amended complaint.   But, and

---

[3] Eldridge overruled Leigh Furniture and Pratt v. Prodata, 885 P.2d 786 (Utah 1994), which allowed a plaintiff to prove a tortious interference claim by showing the defendant acted with improper purpose, even if the means the defendant used were proper.   Eldridge therefore moots the parties' arguments over whether Plaintiffs adequately pled improper purpose.

contrary to the arguments of the State Farm Defendants, Plaintiffs need not identify the

specific statute, regulation, or common law rule Defendants conduct violated in order to

state a claim.    See Johnson v. City of Shelby, Mississippi, 136 S. Ct. 346, 346 (2014)

("Federal pleading rules call for 'a short and plain statement of the claim showing that the

pleader is entitled to relief'; they do not countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim asserted.").    Plaintiffs have

alleged conduct–including disparagement of their businesses–that, if proven, would

constitute improper means of interference (See FAC, ¶¶ 89-92).

Plaintiffs' tortious interference claims must be dismissed for a different reason.    As

with Plaintiffs' quantum meruit claim, their generalized assertion that they entered into

DRPs with Defendants renders the tortious interference claim implausible.    As I

explained in my report and recommendation in Capitol Body Shop,

> If Plaintiffs are to be believed, each and every Defendant
> "steered and attempted to steer" customers away from each
> and every Plaintiff (Doc. 3, ¶ 130).    This is implausible in light
> of the allegation that (at least some) Plaintiffs had DRP
> agreements with (at least some) Defendants, and were
> therefore "preferred" shops (Doc. 3, ¶¶ 49-50; see also id.,
> ¶ 99-100 (alleging that Defendants steered insureds and
> claimants to preferred or favored shops and away from
> "noncompliant" shops.")).
>
> The amended complaint alleges that all Defendants
> committed the same violations of law against all Plaintiffs.
> The result is a complaint that alleges that every Defendant
> tortuously interfered in the business of every Plaintiff.

Capitol Body Shop, Doc. 82 at 13.

As the Court's order dismissing the original complaint in the Florida case

explained, this is not an acceptable manner of pleading.    A & E Auto Body, No. 6:14-cv-

310, Doc. 110 (M.D. Fla. June 11, 2014) (order dismissing original complaint).    Here, as

in the Mississippi case, I recommend that the Court dismiss this count without prejudice, with instructions that Plaintiffs identify specifically which Defendants interfered with which Plaintiffs.   See Capitol Body Shop, Doc. 82 at 14; accord Brewer Body Shop, Doc. 78 at 11-12.

### Count IV: Conversion

Under Utah law, a conversion is "'an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.'"   State v. Twitchell, 832 P.2d 866, 870 (Utah. App. 1992) (quoting Allred v. Hinkley, 238 P.2d 726 (Utah 1958)).   "[A] party alleging conversion must show that he or she is entitled to immediate possession of the property at the time of the alleged conversion."   Fibro Trust, Inc. v. Brahman Financial, Inc., 1999 UT 13, ¶ 20, 974 P.2d 288.   Ordinarily, "money cannot be the subject of an action for conversion."   In re Ogden, 314 F.3d 1190, 1200 (10th Cir. 2002) (citing Twitchell, 832 P.2d at 870).   But, Utah courts recognize claims for conversion of money where it is wrongfully received or where funds obtained for definite application are misappropriated.   Ogden, 314 F.3d at 1200; Twitchell, 832 P.2d at 870.

Plaintiffs' conversion claim fails because they have not pled facts demonstrating a right to possess any money held by Defendants.   The FAC alleges that they performed work "for which Defendants have refused to pay or pay in full," and that this "constitutes willful interference with Plaintiffs' property–their money, [and] the fruits of their labor" (FAC, ¶¶ 121-22).   Plaintiffs fail to cite any Utah case or statute supporting the notion that a repair shop's expenditure of time and money repairing an insured's or claimant's

automobile gives the shop a property interest in money in the insurer's bank account.[4]
(Doc. 53 at 28-29; Doc. 76 at 25; Doc. 77 at 24-25; Doc. 53 at 28-29).

Federal courts deciding state-law claims "are supposed to apply state law, not rewrite it." Bonney v. Canadian National Ry., 800 F.2d 274, 280 (1st Cir. 1986). Because Utah law does not give repair shops a property interest in an insurance company's funds, I recommend that the Court dismiss Count IV of the FAC.   Accord Brewer Body Shop, Doc. 78 at 13; Capitol Body Shop, Doc. 82 at 14-15; A&E Auto Body, 2015 WL 304048, at 9.

Counts V and VI: Federal Antitrust Claims

Plaintiffs' antitrust claims are indistinguishable from the claims asserted by the plaintiffs in A&E Auto Body.   On January 21, 2015, the Court dismissed those claims without prejudice, with leave to amend.   A&E Auto Body, 2015 WL 304048, at *9-12 (M.D. Fla. Jan. 21, 2015).   The Court's reasoning in A&E Auto Body applies to Plaintiffs' amended complaint.   Accordingly, I recommend that Counts VII and VIII be dismissed without prejudice, for the reasons stated in the dismissal order in A&E Auto Body.

### IV. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Motions to Dismiss at docket entries 45 and 51 be **DENIED as moot**; that the other Motions to Dismiss be **GRANTED**; that the FAC be **DISMISSED**, with prejudice as to Count II and without prejudice as to the remaining counts, and that Plaintiffs be allowed 21 days leave to amend.

---

[4] Utah law does, by contrast, impose a lien on an insureds' or claimant's car in favor of the body shop that repaired it.   See Utah Code § 38-2-3.   If performance of repairs also created a property interest in funds held in insurance company bank accounts, one would expect such an interest to also be set out in some statute, or at least in some judicial decision.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 5, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record