UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALPINE STRAIGHTENING SYSTEMS,
A.F. COLLISION REPAIR, INC., PERKS
AUTO REPAIR, INC., JENSON
ENTERPRISES, INC., B&B AUTO BODY
& PAINT, INC., LINDON COLLISION
CENTER L.L.C., J.P.'S CUSTOM BODY
& PAINT, INC., DAVE'S BODY SHOP,
INC. and CHRIS BODY & PAINT, INC.,

     Plaintiffs,

v.                                           Case No:  6:14-cv-6003-Orl-31TBS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, MID-
CENTURY INSURANCE COMPANY,
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY, ALLSTATE
INSURANCE COMPANY, AMERICAN
FAMILY MUTUAL INSURANCE
COMPANY, PROGRESSIVE CLASSIC
INSURANCE COMPANY,
PROGRESSIVE DIRECT INSURANCE
COMPANY, GEICO GENERAL
INSURANCE COMPANY, FARM
BUREAU PROPERTY & CASUALTY
COMPANY, LIBERTY MUTUAL FIRE
INSURANCE COMPANY, ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY, USAA
CASUALTY INSURANCE COMPANY,
UNITED SERVICES AUTOMOBILE
ASSOCIATION, BRISTOL WEST
INSURANCE COMPANY, WESTERN
UNITED INSURANCE COMPANY,
SAFECO INSURANCE COMPANY OF
AMERICA, UNITED AUTOMOBILE
INSURANCE COMPANY, UNITED
INSURANCE COMPANY, FARMERS
INSURANCE EXCHANGE, BEAR RIVER
MUTUAL INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY
COMPANY, STATE FARM GENERAL

INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, ALLSTATE
VEHICLE AND PROPERTY INSURANCE
COMPANY, PROGRESSIVE AMERICAN
INSURANCE COMPANY,
PROGRESSIVE CASUALTY
INSURANCE COMPANY,
PROGRESSIVE MAX INSURANCE
COMPANY, ZURICH AMERICAN
INSURANCE COMPANY and ZURICH
AMERICAN INSURANCE COMPANY OF
ILLINOIS,

        Defendants.

_____

## <u>REPORT AND RECOMMENDATION</u>

      This case comes before me on referral from the district judge, for report and

recommendation on the questions of state law raised in the following motion papers:

- Geico General Insurance Company's Motion and Supporting Memorandum to Dismiss Plaintiffs' First Amended Complaint (Doc. 104);

- Certain Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 106);

- Motion of Moving Defendants to Dismiss the Second Amended Complaint and Supporting Memorandum of Law (Doc. 107);

- Omnibus Response to Defendants' Motions to Dismiss Second Amended Complaint (Doc. 111);

- Moving Defendants' Reply in Support of their Motion to Dismiss (Doc. 113);

- Geico General Insurance Company's Reply Memorandum in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 116); and

- Certain Defendants' Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 117).

      After due consideration, I respectfully recommend that the motions be granted in-

so-far as the state court claims are concerned.

# I. Background

The Court is familiar with the background of this case.   Plaintiffs are nine Utah auto body repair shops and Defendants are 20 insurance companies that write automobile insurance in the state of Utah.   Plaintiffs allege that over a course of years, they have provided motor vehicle collision repair services to Defendants' policyholders and claimants (Doc. 102, ¶ 34).   Plaintiffs complain that "Defendants have engaged in an ongoing, concerted and combined intentional course of action and conduct, to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants."   (Id. at ¶ 36).   Defendants have allegedly

> combined to utilize their aggregated market power to exert control over every aspect of the collision repair industry, including but not limited to price fixing of labor rates, price fixing of replacement parts, compulsory use of substandard or dangerous replacement parts, compulsory use of substandard and thus dangerous replacement parts, compulsory use of a parts procurement program which directly financially benefits State Farm and indirectly benefits the remaining Defendants and risks harm to consumers, boycotting shops which refuse to comply with fixed prices or use substandard or improper parts, and interfering with Plaintiffs' current and prospective business relations by intentionally misrepresenting and making knowingly false statements regarding the quality, efficiency and ethical reputation of their businesses, exerting economic duress and coercion upon Plaintiffs to capitulate and also upon consumers including direct threats to refuse coverage or portions thereof if the consumer persists in his/her effort to do business with the given Plaintiff.

(Id. at ¶ 37).   Defendants' actions are alleged to "have eradicated competition within the body shop industry."   (Id. at ¶ 38).

Plaintiffs filed their original complaint in the United States District Court for the District of Utah on April 10, 2014 (Doc. 1).   Two months later they filed an amended

complaint (Doc. 13).   Defendants moved to dismiss the amended complaint, and before the motions were fully briefed, the United States Judicial Panel on Multidistrict Litigation transferred this and three other cases to this district for coordinated or consolidated pretrial proceedings before Senior District Judge Gregory A. Presnell.   In re Auto Body Shop Antitrust Litigation, 37 F. Supp. 3d. 1388 (J.P.M.L. Aug. 8, 2014).   In its Order disposing of the motions to dismiss, the Court dismissed Plaintiffs' quasi estoppel count with prejudice, and the remaining counts without prejudice, with leave to amend (Docs. 95, 101).

Plaintiffs' Second Amended Complaint ("SAC") alleges claims of price fixing and illegal boycott in violation of the Sherman Act, 15 U.S.C. § 1, and state-law claims for quantum meruit, tortious interference with economic relations, and conversion (Doc. 102). On March 9, 2016, the Court dismissed all of the antitrust claims with prejudice (Doc. 126).

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the  sufficiency of the complaint; it does not decide the merits of the case.   Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984).   In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011).   The Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."   Twombly, 550 U.S. at 546.   The court should liberally

construe the complaint's allegations in the plaintiff's favor.   <u>Jenkins v. McKeithen</u>, 395

U.S. 411, 421 (1969).   But, a claim for relief "requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."   <u>Id.</u> at 555.

"Factual allegations must be enough to raise a right to relief above the speculative

level[.]"   <u>Id.</u>   A complaint must be dismissed if it does not plead "enough facts to state a

claim to relief that is plausible on its face."   <u>Id.</u> at 570.   Legal conclusions devoid of

factual support are not entitled to an assumption of truth.   <u>Mamani v. Berzain</u>, 654 F.3d

1148, 1153 (11th Cir. 2011) (citing <u>Iqbal</u>, 556 U.S. at 678); <u>Davila v. Delta Air Lines, Inc.</u>,

326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

<u>Count I: Quantum Meruit</u>

    Count I of the SAC is titled Quantum Meruit: Contract Implied in Law, Quasi-

Contract, and Unjust Enrichment (Doc. 102 at 78).   Utah courts recognize "two branches"

of "quantum meruit:" "contract implied in law (also called unjust enrichment or quasi-

contract) and contract implied in fact."   <u>Emergency Physicians Integrated Care v. Salt</u>

<u>Lake County</u> (hereinafter "EPIC"), 167 P.3d 1080, 1083 (Utah 2007) (citing <u>Davies v.</u>

<u>Olson</u>, 746 P.2d 264, 269 (Utah Ct. App. 1987)).   Plaintiffs' claim is of the first type (Doc.

102, ¶¶ 356-57).   "To prove the existence of a contract implied in law, a plaintiff must

establish the following: '(1) [T]he defendant received a benefit; (2) an appreciation or

knowledge by the defendant of the benefit; (3) under circumstances that would make it

unjust to retain the benefit without paying for it.'"   <u>EPIC</u>, 167 P.3d at 1083 (quoting

<u>Davies</u>, 746 P.2d at 269) (alterations in original).

    The SAC does not state a cause of action for quantum meruit because it does not

allege that Plaintiffs conferred a benefit on Defendants (Docs. 104 at 23; 106 at 19; 107 at

16).   Plaintiffs fail to allege that repairs are done at Defendants' request, that Defendants

have a duty to repair the vehicles, or that repairing the vehicles discharges Defendants'

obligations to their insureds.   And, it appears from the SAC that Defendants have the

same obligation to pay before and after repairs are made.   See e.g., EPIC, 167 P.3d at

1086 (where the county outsourced to physicians its constitutional and statutory

obligation to provide medical care to inmates, the physicians' provision of medical care

benefited the county by discharging its constitutional and statutory duties); Baugh v.

Darley, 184 P.2d 335, 337 (Utah 1947) ("The benefit may be an interest in money, land,

chattels, or choses in action; beneficial services conferred; satisfaction of a debt or duty

owed by him; or anything which adds to his security or advantage."); Restatement (First)

of Restitution § 1 cmt. b (1937) (defining "benefit")).

Plaintiffs argue that Defendants collect premiums in exchange for their promise to

repair, or pay for the repair of the insureds' damaged vehicles (Doc. 111 at 28).   So

Plaintiffs conclude, when they repair damaged vehicles, they are benefitting Defendants

by fulfilling Defendants' contractual obligations to their insureds.   (Id. at 28-29).

Plaintiffs assert that but for the repairs they make, Defendants could not perform their

contractual obligations to their insureds (Id.).   This argument fails because it is not

supported by the averments in the SAC.   Plaintiffs do not allege that Defendants have an

obligation to repair their insureds' vehicles.   Instead, they say Defendants are obligated

to pay the cost to restore damaged vehicles to their safe pre-accident conditions (Doc.

102, ¶ 360).   Plaintiffs complain that they do the work, but Defendants do not pay them

enough to fully cover the repairs.   The SAC alleges that this "benefit[s] Defendants by

allowing them to reap massive customer and business advantages and fool customers

into believing they fully pay for repairs when they do not."   (Id. at ¶ 359).   As the Court

explained in <u>A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co.</u>, No. 6:14-cv-310-

Orl-31TBS, 2015 WL 304048, at *5 (M.D. Fla. Jan. 21, 2015):

> The efforts to state a claim in Counts I and II fail because the
> Plaintiffs have not conferred a benefit upon the Defendants.
> The Plaintiffs point to the repairs they performed, asserting
> that they "benefitted Defendants and Defendant's
> insured/claimants for whom Defendants are required to
> provide payment for repairs." (Amended Complaint at 43).
> However, the Amended Complaint provides no support for this
> assertion. The repairs at issue obviously provided a benefit
> to the owners of the vehicles. But so far as the Amended
> Complaint discloses, the only effect of such a repair on the
> insurance company is the incurring of an obligation to pay for
> it. *Cf.* <u>Adventist Health System/Sunbelt, Inc. v. Medical Sav.</u>
> <u>Ins. Co.</u>, 2004 WL 6225293 at *6 (M.D. Fla. Mar. 8, 2004)
> (Fawsett, J.) (in unjust enrichment case, stating that "a third
> party providing services to an insured confers nothing on the
> insurer except a ripe claim for reimbursement," and citing
> cases).

    If Plaintiffs had conferred a benefit on Defendants, they would still have to show

that Defendants' retention of the benefit is unjust in the absence of additional

compensation. <u>EPIC</u>, 167 P.3d at 1086 ("It is not enough that a benefit was conferred on

the defendant, and rather, the enrichment to the defendant must be unjust in that the

defendant received a true windfall or 'something for nothing.'") (quoting 66 Am. Jur. 2d

Restitution and Implied Contracts § 13 (2001) (internal quotations omitted)). Plaintiffs

allege that State Farm fixed the "market rates" for parts and repairs and "Defendants have

engaged in an ongoing, concerted and combined intentional course of action and conduct

to improperly and illegally control and depress automobile damage repair costs." (Doc.

102, ¶¶ 36, 136, 196). Plaintiffs complain that the Defendants' fixed price structure does

not fully compensate them for the services they provide (<u>Id.</u> at ¶¶ 94, 100, 107, 110-11).

They say that when it comes to payment, there is no negotiation or even an opportunity to

negotiate since Defendants' position is essentially take it or leave it (<u>Id.</u> at ¶¶ 365-67).

Plaintiffs accept Defendants' prices because they are not "in a viable position to turn away that business since doing so would be tantamount to occupational suicide."   (Id. at ¶ 366).

Plaintiffs do not allege that Defendants have failed to pay for the repairs.   What Plaintiffs are complaining about is that Defendants do not make "full payment" because Plaintiffs' services are worth more than the prices Defendants are willing to pay (Id. at ¶¶ 174, 358, 365-68).   Plaintiffs' claim is not plausible.   They have dealt with Defendants for years and know what Defendants will pay (Id. at ¶ 368; Doc. 111, pp. 29-30).   Given the parties' history, Plaintiffs could not, under any level of reasonableness, have expected to be paid more than what they received.   If they are unhappy with the prices Defendants pay, then they can negotiate higher prices before performing the repairs or refuse to make repairs for Defendants' insureds.   See Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. d ("Because contract is strongly preferred over restitution as a basis for private obligations, restitution is not usually available to a claimant who has neglected a suitable opportunity to make a contract beforehand.").   Quantum meruit is not available to secure a better bargain for Plaintiffs than the amounts they agreed to when they accepted the work.

Under Utah law, there is no claim for quantum meruit where there is a valid contract between the parties.   Davies, 746 P.2d at 268 ("Recovery under *quantum meruit* presupposes that no enforceable written or oral contract exists.").   Defendants argue that for each repair made, there is a contract.   Plaintiffs do not address this argument in their response to the motions to dismiss[1] (Doc. 111 at 28-30).   The SAC generally alleges an

---

[1] When a party fails to respond, that is an indication that the motion is unopposed.   Foster v. The Coca-Cola Company, No. 6:14-cv-2102-Orl-40TBS, 2015 WL 3486008, at *1 (M.D. Fla. June 2, 2015); Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) (citing Kramer v. Gwinnett Cty., Ga., 306

established, ongoing course of business that begins with an estimate for each repair. Once the appropriate Defendant has approved the estimate, a Plaintiff makes the repair, and the Defendant pays the Plaintiff.   Thus, it appears that there is a contract between the interested parties before each specific repair is made, which precludes Plaintiffs' quantum meruit claim.

The SAC alleges that seven of the nine Plaintiffs now have or in the past have had DRP[2] agreements with some of the Defendants (Doc. 102, ¶ 98).   Plaintiffs do not address this argument (Id.).   Despite Plaintiffs' lack of response, I find the allegations concerning the DRPs too general to support dismissal of the quantum meruit count on this basis.

The counts of the complaint do not incorporate specific preceding paragraphs by reference.   If the quantum meruit count does not include the preceding averments then it does not state a cause of action for a number of reasons.   Alternatively, this count must include all 355 of the preceding paragraphs including those relating to Plaintiffs' antitrust, conversion, and tortious interference claims.   The result is that the SAC is an impermissible shotgun pleading.

The SAC is also an impermissible group pleading.   It lacks the individualized factual allegations necessary to inform Defendants and the Court concerning the

---

F. Supp. 2d 1219, 1221 (N.D. Ga. 2004); Daisy, Inc. v. Pollo Operations, Inc., No. 2:14-cv-564-FtM-38CM, 2015 WL 2342951, at *1 (M.D. Fla. May 14, 2015) (when defendant did not respond court could consider motion to compel unopposed); Brown v. Platinum Wrench Auto Repair, Inc., No. 8:10-cv-2168-T-33TGW, 2012 WL 333808, at * 1 (M.D. Fla. Feb. 1, 2012) (after party failed to respond, court treated motion for summary judgment as unopposed).

 [2] "DRP" is a reference to a "direct repair program."   (Doc. 102, ¶ 86).   Many Defendants allegedly instituted DRPs for the stated purpose of benefitting claimants by ensuring a pre-screened pool of reputable body shops to whom claimants could be referred (Id.).   Plaintiffs allege that in reality, Defendants employ DRPs to suppress repair costs to the detriment of Plaintiffs and their customers (Id. at ¶ 89).

transactions upon which it is based.   Without this information, Defendants cannot be expected to respond to the SAC in an informed way.

Given the amount of time Plaintiffs have had to correct these deficiencies, and because I see no realistic possibility that they can overcome these impediments, I respectfully recommend that the quantum meruit count be dismissed with prejudice.

Count II: Tortious Interference with Economic Relations

To establish a claim for tortious interference with economic relations under Utah law, a plaintiff must show "'(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) ... by improper means, (3) causing injury to the plaintiff.'"  Eldridge v. Johndrow, 345 P.3d 553, 556 (Utah 2015) (quoting Leigh Furniture & Carpet Co. v. Isom, 657 P.2d 293, 304 (Utah 1982)).

Plaintiffs argue, wrongly, that the standard for tortious interference with economic relations is governed by the Utah Supreme Court's decision in Leigh Furniture, which said a "plaintiff must prove that the intentional interference with existing or potential economic relations that caused injury to the plaintiff was done for an improper purpose or by improper means."   Leigh Furniture, 657 P.2d at 311.   As the Court explained in an earlier Order, Leigh Furniture was expressly overruled by Eldridge (Doc. 95 at 9 n.3). The court in Eldridge "conclude[d] that in the absence of any improper means, an improper purpose is not grounds for tortious interference liability."   Eldridge, 345 P.3d at 565 ("We also disavow all dicta in Leigh Furniture & Carpet Co. v. Isom, 657 P.2d 293 (Utah 1982), that would allow liability based solely on an improper purpose.").   Eldridge moots Plaintiffs' argument that they have established tortious interference by alleging that Defendants acted for an improper purpose.

"'Improper means are present where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common law rules.   Improper means include violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.'"   <u>Keith v. Mountain Resorts Dev., L.L.C.</u>, 337 P.3d 213, 227 (Utah 2014) (quoting <u>Overstock.com, Inc. v. SmartBargains, Inc.</u>, 192 P.3d 858, 864 (Utah 2008)).

The SAC alleges that Defendants "intentionally interfere with the Plaintiffs' existing and/or prospective economic relations by steering large amounts of business away from them" "[i]n direct violation of Utah Code Section 31A-26-303(1) and (4) and Utah Administrative Code Rule 590-190-1 and Rule 590-190-11(4)."   (Doc. 102, ¶ 371 (footnotes omitted)).   Utah Code sections 31A-26-303(1) and (4) prohibit unfair claim settlement practices by insurers and give the Commissioner of Insurance authority to "define by rule, acts or general business practices which are unfair claim settlement practices."   The Insurance Commissioner has used this authority to establish minimum standards for the investigation and disposition of property insurance claims.   UT ADC R590-190-1.   Among other things, the Commissioner's rules prohibit insurers from "requiring a claimant to travel an unreasonable distance to inspect a replacement automobile, to obtain a repair estimate or to have the automobile repaired at a specific repair shop."   UT ADC R590-190-11(4).   These rules are "regulatory in nature and [are] not intended to create any private right of action."   UT ADC R590-190-1.   <u>See also</u> <u>Cannon v. Travelers Indem. Co.</u>, 994 P.2d 824, 828 (Utah Ct. App. 2000).

Defendants argue that by relying upon rules for which no private cause of action exists, Plaintiffs are trying to pass off an unfair settlement practices claim as a claim for

tortious interference (Doc. 106 at 23-24).   Defendants contend that, "[u]nder Utah law, Plaintiffs cannot maintain a tort claim based on the same factual predicate as a claim that is expressly precluded by statute."   (Doc. 107, p. 20 (citing Brockbank v. JPMorgan Chase Bank, N.A., No. 2:11CV671DAK, 2012 WL 1142933, at *3 (D. Utah Apr. 4, 2012) ("This court and other courts have repeatedly held that there is no private right of action under HAMP and that 'HAMP-based claims disguised as other claims, such as breach of contract, are not cognizable.'"); Espinoza v. Gold Cross Servs., Inc., 234 P.3d 156, 158-159 (Utah Ct. App. 2010) ("While conceding they have no independent private right of action under HIPAA, Plaintiffs have devised a claim that incorporates HIPAA's fee schedules.   They inferentially rely on federal fee schedules to argue that they are entitled to recover from Gold Cross under the equitable doctrine of unjust enrichment. …   We have no basis in state or federal law to enforce federal regulations promulgated under HIPAA, either directly or as a component of a state cause of action.")).   Plaintiffs have not addressed this argument, and dismissal is warranted on this basis.   Plaintiffs cannot state a claim for tortious interference based on a violation of the Utah Unfair Property, Liability and Title Claims Settlement Practices Rules, UT ADC R590-190, when the legislature expressly precluded a private right of action for violation of the rules.   UT ADC R590-190-1.   Cf. Rowe v. DPI Specialty Foods, Inc., No. 2:13-CV-00708-DN, 2015 WL 3533844, at *7-8 (D. Utah June 4, 2015) (a defense to a claim for defamation also applies to a claim for tortious interference with economic relations based on the same operative facts); Brockbank, 2012 WL 1142933, at *3.   Accordingly, I respectfully recommend dismissal of the tortious interference count to the extent it relies upon UT ADC § 31A-26-303(1) and (4), and UT ADC R590-190-1 and R590-190-11(4).

The Court has already dismissed Plaintiffs' antitrust claims and thus, they do not serve to establish improper means.   This leaves Plaintiffs' allegations of improper steering.   Some of these allegations concern unsuccessful attempts by specific Defendants to steer specific customers away from a Plaintiff.   These unsuccessful attempts at steering do not constitute tortious interference because Utah law requires actual damages resulting from the interference, and Plaintiffs have not alleged a cognizable injury in any situation where a Defendant tried but failed to steer someone away from one of Plaintiffs' businesses.   Eldridge, 345 P.3d at 556.

According to the SAC: "In 2014 Consumer Dennis Turner ended up taking his vehicle to the shop American Family told him to take it to instead of the shop he had experience with and trusted, Chris' Body and Paint.   After Chris's gave American Family the estimate, the insurance company pressured and coerced Mr. Turner into believing he needed to take it to one of their preferred shops for an estimate."   (Doc. 102, ¶ 239).   Some Defendants argue that this paragraph fails to state a cause of action because it does not allege the use of improper means by Defendant American Family (Doc. 106 at 23).   Plaintiffs have not taken issue with this argument.   "[P]ressured and coerced" are conclusions, unsupported by averments of fact.   Once they are eliminated, paragraph 239 of the SAC fails to state a cause of action against American Family.

Defendant State Farm allegedly pressured customer Jack Black into not taking his vehicle to Chris' Body and Paint for repairs (Doc. 102, ¶ 241).   State Farm accomplished this by telling Black that Chris' was not on it its preferred list of shops, Chris' would not agree with State Farm's appraiser, Black would have to pay more there, and State Farm would not warrant the repairs (Id.).   State Farm says the statements attributed to it are accurate and argues that truthful statements cannot constitute improper means (Doc. 106

at 22-23).   It says Chris' Body and Paint is not on its list of preferred, DRP shops, it does require DRP shops to warrant their repairs, and insurance policies may not cover all the work a repair shop recommends, in which event, the customer may be required to pay more (Id.) (citing Quality Auto Body, Inc. v. Allstate Ins. Co., 660 F.2d 1195, 1204 (7th Cir. 1981) (where the body shop refuses to do the work for the amount the insurance company is willing to pay, the customer must pay the additional charge)).   Taken as true, these averments show an ongoing disagreement between State Farm and Chris' Body and Paint concerning prices and repair procedures, but they do not rise to the level of improper means and therefore, a cause of action for tortious interference is not stated.

The SAC alleges that in 2014, Plaintiff JP's Custom Paint and Body towed a vehicle and gave the owner a ride back to the repair shop (Doc. 102, ¶ 244).   The owner called her insurance company, Defendant Farmers, and was told that JP's Custom Paint and Body was not on Farmers' preferred list (Id.).   Farmers also told the owner her vehicle would have to be taken to a different shop (Id.).   Within an hour, Farmers sent a tow truck to pick-up the vehicle (Id.).   JP "called the driver and asked her told her [sic] they would not guarantee JP's work and that therefore she 'was afraid' to let him repair it." (Id.).   Farmers maintains that these allegations are too vague and that the customer and Farmers' representative are not identified (Doc. 107 at 22).   It also argues that the statement that it would not warranty JP's work, accepted as true, is not actionable (Id.).   Plaintiffs have not disputed Farmers' argument.   Farmers' statement that it would not warranty JP's Custom Paint and Body's work is not actionable since it appears to be true and therefore, does not constitute the use of improper means.

The SAC alleges that in February, 2015, customer Jayme Montgomery, took her damaged car to Plaintiff Perk's Auto for repair (Doc. 102, ¶ 247).   When Farmers learned

that the car was at Perk's Auto it told Montgomery that Perk's was not on its preferred list and that Montgomery had to take her car to another shop (Id.).   Montgomery allegedly felt forced to use the other shop because of Farmers' statement (Id.).   Farmers fails to address these allegations in its motion to dismiss (Doc. 107).   The averment that Farmers told Montgomery she had to take her car to another shop is sufficient to allege improper means because it accuses Farmers of making an untruthful statement to accomplish its objective.   However, in addition to improper means, Plaintiffs must plead facts showing that the alleged interference caused an injury.   Brown v. Peterson, No. 20021070-CA, 2004 WL 2689034, at *2 (Utah Ct. App. Nov. 26, 2004).   Plaintiffs have not alleged an injury suffered by Perk's Auto as a result of Farmers' actions.   Plaintiffs failed to plead facts showing a "causal connection" between the conduct alleged and any resulting damages.   Brown v. Peterson, 2004 WL 2689034, at *2 (Utah Ct. App. Nov. 26, 2004).

The Court previously dismissed Plaintiffs' tortious interference count because it relied on group pleading which resulted in allegations that every Defendant tortuously interfered in the business of every Plaintiff, including those with whom Defendants had DRPs (Docs. 101 at 2; 95 at 9-11).   Now, Plaintiffs argue that "it is the known allegation of the Plaintiffs that each and every Defendant in fact engaged in each and every wrongful conduct alleged against each and every Plaintiff."   (Doc. 111 at 27).   This assertion is not credible and should not be allowed as a reason to excuse Plaintiffs from their continued reliance on group pleading.   As the Court has said in the past, "Plaintiffs must have some basis to believe that certain Defendants interfered with certain of the Plaintiffs' customers," and a "general allegation that some unidentified Defendants – or all Defendants – interfered with some unidentified customers of some unnamed Plaintiff does

not satisfy the requirements of <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)."   (Doc. 101 at 2).

With the exception of the specific examples of steering that are alleged in the SAC,

nothing has changed.   Therefore, I recommend the Court once again dismiss the tortious

interference count.

   This count is also a shotgun pleading consisting of 376 paragraphs which include

averments concerning the antitrust, quantum meruit, and conversion counts (Doc. 102).

This is another reason why the tortious interference count should be dismissed.

   Plaintiffs have had a sufficient opportunity to discover and allege any claims of

tortious interference they have against Defendants.   With the possible exception of

Perk's Auto's claim against Farmers based upon the loss of Montgomery's business, it

does not appear that Plaintiffs can state a claim for tortious interference against

Defendants.   Therefore, with the exception of the Montgomery claim, which I recommend

be dismissed without prejudice, with leave to amend, I recommend that this count be

dismissed with prejudice.

<u>Count III: Conversion</u>

   The conversion claim in the SAC is identical to the claim in the amended complaint

which the Court found insufficient to state a cause of action (Docs. 13, ¶¶ 120-23; 102, ¶¶

377-80).   Accordingly, for the reasons stated in the Court's Order (Doc. 101), I find that

the SAC fails to state a claim for conversion.   The conversion claim also fails because

ordinarily, money cannot be the subject of an action for conversion.   Utah recognizes a

narrow exception for claims for the conversion of money that was wrongly received or

where funds obtained for a definite application are misappropriated.   <u>In re Ogden</u>, 314

F.3d 1190, 1200 (10th Cir. 2002).   But, the SAC does not allege that any Plaintiff has the

right to possess money held by any Defendant.   For these reasons, and because I

believe further attempts to amend this count would be futile, I respectfully recommend that the conversion count be dismissed with prejudice.

## IV. Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that all of Plaintiffs' state law claims except the claim of Perk's Auto against Farmers based upon the loss of Montgomery as a customer be dismissed with prejudice.   Unless Perk's Auto can establish an independent basis for subject matter jurisdiction in this Court, I respectfully recommend that the Court decline to exercise supplemental jurisdiction over this claim.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on March 25, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record