## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ALPINE STRAIGHTENING SYSTEMS, et al**                **PLAINTIFFS**

**VS**                                                  **CAUSE NO. 6:14-CV-6003**

**STATE FARM MUTUAL AUTOMOBILE**
      **INS. CO., et al**                               **DEFENDANTS**

---

## PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

---

Come now, Plaintiffs in the above-captioned cause and serve this, their Objections to Magistrate's Report and Recommendation and state to the Court the following:

The Report and Recommendation issued as Document No. 127 addresses only the state law claims set forth in the Plaintiffs' amended complaint ("complaint" or "second amended complaint"). Each of these are discussed below.

### QUANTUM MERUIT

Much of the Report and Recommendation's contents regarding the quantum meruit claim focuses on the purported failure of the complaint to allege Plaintiffs conferred a benefit upon Defendants. Specifically, the Report finds: Plaintiffs do not allege they conferred a benefit, do not allege auto repairs were performed at Defendants' request, do not allege Defendants have a duty to repair, or that repairing vehicles discharged Defendants' obligation to their insureds.

The Report further states the complaint does not contain any averments that a benefit was conferred upon the Defendants, does not allege Defendants have an obligation to repair vehicles, does not allege Defendants failed to pay for the benefit received, only did not pay in full, that

Plaintiffs claims are simply not plausible, that Plaintiffs "could not under any circumstances have believed Defendants would pay more" given Defendants' course of conduct, that Plaintiffs could have negotiated if they were unhappy with the payment they received, that Plaintiffs could have contracted for the services before performing repairs and that for each repair, a contract existed such that no claim for equitable relief existed.

For a variety of reasons, each of these conclusions is a violation of state law, federal rule and Supreme Court precedent, and affirmative misrepresentations of the contents of the complaint.

1.     The Report's conclusions violates the law of the case

The only basis given by the Court in previously dismissing Plaintiffs' quantum meruit claim was Plaintiffs' purported allegation they had contracts with the Defendants due to the various Direct Repair Program agreements. *Alpine Straightening Sys. v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 1911635, at *1 (M.D. Fla. Apr. 27, 2015).  No other basis for dismissal was provided.  Plaintiffs were provided the opportunity to amend and did so, expressly rejecting in the subsequent complaint that any contract exists or existed between any plaintiff and any defendant.

However, the current Report raises a host of purported pleading deficiencies which contradict the prior Report and order.

The Court previously recognized that Plaintiffs' services to Defendants' insureds and claimants constitute a benefit to the Defendants:

> To be sure, there are differences between this case and EPIC. The most direct source of an insurer's duty is the contract with the insured rather than any statutory or constitutional provision, although insurance contracts are regulated extensively by statute. See Utah Code § 31A–22–303 (setting forth requirements for motor vehicle liability coverage). But the source of a duty has nothing to do with whether its discharge benefits the obligor. Nor should it be relevant that the insurer's duty is to pay for repairs, rather than to actually make them. If a shop repaired an insured's or

> claimant's car and then gratuitously waived all payment, the insurer would plainly "benefit" from the transaction, just as a county would benefit if a doctor altruistically disclaimed any right to compensation after providing lifesaving treatment to an inmate at the county jail, although in each case there would be no injustice and thus no recovery, see *Kershaw v. Tracy Collins Bank & Trust,* 561 P.2d 683 (Utah 1977). Here, auto body shops, like the doctors in EPIC, have demanded payment and (allegedly) received less than "reasonable value" for their services. What was sufficient to show a "benefit" to the county in EPIC should be sufficient to show a "benefit" to Defendants in this case.

*Alpine Straightening Sys.,* 2015 WL 1911635, at *5.   Despite this, for unidentified reason, the current Report decides the Plaintiffs have failed to sufficiently allege a benefit conferred upon the Defendants.

Having previously decided Plaintiffs' services confer a benefit to Defendants under Utah state law, the Report's contrary conclusion violates the law of the case.  An issue decided at one stage of a case is binding at later stages of the same case.  *Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.,* 210 F.3d 1348, 1350 (11th Cir. 2000),  *United States v. Escobar-Urrego,* 110 F.3d 1556, 1560 (11th Cir. 1997).

A party is justifiably entitled to rely upon the prior rulings of the court.  "To hold otherwise would be to permit parties the option of deciding which orders to obey, or conversely to condemn parties to the instability of guessing which orders to abide and which to ignore. This will not do." *In re Demos,* 57 F.3d 1037, 1039 (11th Cir. 1995).  See also,  *In re Moss,* 258 B.R. 391, 399 (Bankr. W.D. Mo.) aff'd, 266 B.R. 408 (B.A.P. 8th Cir. 2001) aff'd, 289 F.3d 540 (8th Cir. 2002) ("For the integrity of the courts and the bankruptcy process, it is imperative that parties be able to rely on orders of the court.").

Allowing the quantum meruit claim to be dismissed upon the grounds asserted in the Report would be particularly inequitable.  The Plaintiffs had already been told the allegations of the complaint were sufficient to set forth a quantum meruit claim, specifically that Utah law recognized conferral of a benefit under the facts set forth in the complaint.  The Plaintiffs therefore did not amend the complaint to alter this.  Having been specifically told the allegations were sufficient, the Plaintiffs relied upon this ruling.

Furthermore, the current Report alleges several additional purported problems with the complaint, all of which were raised in previous motions to dismiss and all of which could have been ruled on by the Court a year ago.  The Court did not do so and Plaintiffs therefore had no reason to believe anything other than what was in the Court's order needed to be addressed.

The Plaintiffs amended the single pleading defect identified by the Court.  To dismiss with prejudice under the present circumstances is to punish Plaintiffs for actually believing the Court's prior rulings and acting in conformity therewith.  Plaintiffs submit such a result–punishing a party for relying upon the Court's written word–substantially perverts the ends of justice and constitutes reversible error.

2.      Benefit Conferred Upon Defendants

The Report asserts Plaintiffs failed to allege in the complaint that Defendants benefitted from their services.  This is an inaccurate representation of the contents of the complaint, an inaccurate representation of Utah law as to what constitutes a benefit and arguably breaches the law of the case.

a.   Utah law has specifically recognized services rendered by a third party constitute a benefit to an insurer

Utah has twice specifically recognized that services provided by a third-party vendor which permit a defendant to execute its obligations owed to others constitutes a benefit to the defendant.

The first recognition was the Utah Supreme Court case in *Emergency Physicians Integrated Care v. Salt Lake County*, 167 P.3d 1080 (Utah, 2007) ("*EPIC*").  In that case, medical providers sued for payment for medical services rendered to county inmates.  The defendant, Salt Lake County, argued it was not benefitted by the physicians services, the patients were, therefore they had no obligation to pay any fees above what they chose to pay.  The trial court agreed.

The Utah Supreme Court reversed this decision, specifically holding that a third party who provides the means by which the defendant fulfills its obligations to others has conferred a benefit. The court stated, "it is not an element of quantum meruit that the benefit run exclusively to the party from which compensation is sought."  *Id.* at 1085.

The court further stated, "For practical purposes, the County outsourced its constitutional duty to EPIC.  Had it not done so, it would have been required to employ more on-site medical staff or bear increased liability for providing inadequate care.  These are real benefits that are sufficient to establish the first prong of a quantum meruit claim."  *Id.* at 1086.

The Utah Supreme Court went on to emphasize that benefit under Utah law is broadly, not narrowly, defined: "this court has found that a large variety of items fall under the definition of "benefit," including an 'interest in money, land, chattels, or choses in action; beneficial services conferred; satisfaction of a debt or duty owed by [the defendant]; or anything adds to [the defendant's] security or advantage."

This was further established specifically in the context of insurance in *Benchmark Const.*

*LLC v. Auto-Owners Ins. Co.*, 2013 WL 3479682 (D. Utah July 10, 2013):

> Just as the County in *Emergency Physicians* was unjustly enriched by medical services provided to the inmates, Benchmark has provided sufficient evidence for a fact finder to conclude that Auto–Owners was unjustly enriched by the repair services it had a duty to perform at Sephora. Auto–Owners argues that it was not unjustly enriched since it did not own the store and did not provide insurance to Benchmark. As the court held in *Emergency Physicians*, however, it is not an element of unjust enrichment that the benefit run solely to the party from which compensation is sought. Auto–Owners acknowledges that it insured the site and, therefore, had a duty to pay for the repair work performed at the location. By not having to perform or pay for the repair work at Sephora, Auto–Owners realized a benefit. Auto–Owners still had a duty, to its unidentified insured, to pay for the repair work. Benchmark's performance of the repairs satisfied the duty owed by Auto–Owners and relieved it of its obligation to its insured. Therefore, the court DENIES Auto–Owners' Motion for Summary Judgment and Benchmark is entitled to pursue its claim on the merits of the case.

*Id.* at *2-3.

The State of Utah has therefore specifically recognized that an insurer has a duty to pay for the benefits owed an insured/claimant and that the vendor of services which permit an insurer to execute that duty is entitled to assert a claim against the insurer for equitable restitution.

The Report's conclusion that no benefit has been conferred upon Defendants by the Plaintiffs is directly contrary to established state law. The Court is required to apply state law as the applicable state has defined it; it is not free to alter, amend, add to or detract from it, regardless of what it may believe as to the wisdom of that rule of state law. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 236-237 (U.S. 1940).

### b.   Request for services is not an element of a quantum meruit claim under Utah law

The Report's conclusion that Plaintiffs failed to allege repairs were conducted at the request of Defendants is part and parcel of the "no benefit to Defendants" conclusion.  As a result, the authority set forth above addresses this conclusion, as well.  However, out of an abundance of caution and so as not to lead to a conclusion the Plaintiffs failed to address any issue discussed, Plaintiffs do so separately.

A direct request for services is not an element of a quantum meruit claim under Utah law. The elements under Utah law are:  (1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it.  *EPIC,* 167 P. 3d at 1083.

Some states do include a request element; it is not a novel or unknown concept.  Should a state wish to create a "request" element, they are free to do so.  However, the district court was not free to create it on behalf of Utah which has chosen to forgo this additional requirement.

Utah law requires only knowledge of a benefit, not a request.  "Knowledge" and "request" are not synonymous.  "Knowledge" is defined as acquaintance with facts, truths, or principles, as from study or investigation; general erudition.  Random House Dictionary, 2015 Ed.  "Request" is defined as the act of asking for something to be given or done, especially as a favor or courtesy; solicitation or petition.  *Id.*

The Report literally redefines unambiguous words that are not synonymous or interchangeable.  Transforming a passive element (knowledge) into an active one (request) cannot be construed as anything other than disregard of extant state law and creation of new law. It is

therefore a breach of the Court's established duty to apply the law of the state as that state has defined it pursuant to the Supreme Court requirement.

Not only is a request not an articulated element of the claim, Utah authority excludes it as a reasonable inferential requirement by clearly adopting the *Restatement of Restitution* as set forth by the Arizona Supreme Court, to wit, restitution is imposed for the purpose of bringing about justice without reference to the intentions of the parties. *Jeffs v. Stubbs*, 970 P.2d 1234, 1245 (Utah 1998).

Request is not an element of the claim. Clear authority has found provision of services permitting a defendant to execute a duty or obligation owed a third party constitutes a benefit to that defendant. This authority is not contingent upon request of the defendant. Additional authority establishes that a defendant's intention to be bound is not a pre-requisite to restitution. As a party may be bound in quantum meruit in spite of a lack of intention to pay, it contravenes Utah law for the Middle District of Florida to create an element of request for this cause of action.

Finally, the repair services at issue were, in fact, requested. They were requested by the consumers who own the vehicles. If the Defendants wish to assert that such a request is somehow ineffective, they may do so but they must do so as an affirmative defense for which they bear the burden of pleading and proof. The complaint asserts the contrary and the Court is compelled to accept this factual allegation as true as it does not rise to the level of defiance of every day reality, the Court is not free to discard or disbelieve it. ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.")(*Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009)(internal punctuation omitted).

     c.    Utah insurance regulation prohibits Defendants from making payment of repairs contingent upon use of insurer-approved/selected repair shops

Utah Administrative Code is the body of all effective administrative rules as compiled and organized by the Division of Administrative Rules. Administrative Code R590 applies to insurers and R590-190-12 applies to Unfair Claims Settlement Practices Applicable to Automobile Insurance.

Subsection (5) of R590-190-12 prohibits auto insurers from requiring a claimant to use only the insurer's claim service in order to perfect a claim. Per the Utah Department of Insurance, this subsection, prohibits an insurer from making payment of a claim contingent upon use of an insurer-specified or approved body shop.

As under Utah Regulation an insurer may not make payment of repairs contingent upon choice of repair shop, the Report's conclusion that repairs must be requested by the Defendant insurers may not stand.

Consumers have the choice of repair facility, even over the objections of an insurer and the insurer may not refuse to pay covered repairs. Neither the insurer's consent nor agreement is required before the insurer's obligation to pay for repairs is triggered. The Report's finding that a quantum meruit claim is contingent upon the Defendants' requesting repairs instead of consumers directly contravenes this duly enacted regulation.

The potential for abuse under the Report's conclusion is obvious–if request for services must originate from the insurer, the insurer may defeat the consumer's choice of body shop simply by remaining silent until the consumer capitulates and moves to a body shop of which the insurer approves.

Such economic coercion of consumers is not an unreasonable possibility.  It is an existing reality as set forth in the complaints.  The Defendants already exert economic coercion upon consumers for their choice of body shops, including the Plaintiffs' shops.

The Report therefore doubly errs–it creates a new element for quantum meruit which does not exist in Utah law, and creates an element which directly contravenes corollary state authority.

d. Report's conclusion the complaint fails to allege Defendants have a duty to repair is erroneous and violates Utah law

The Report asserts the complaint fails to allege the Defendants have a duty to repair their insureds' vehicles and therefore the claim for quantum meruit fails as they have conferred no benefit upon the Defendants.  The Report appears to try to draw a dispositive difference between a duty to repair and a duty to pay for repairs.  This is both an erroneous representation of the contents of the complaint and violates Utah law.

First, the Report is erroneous as to the contents of the complaint.  The complaint repeatedly avers the Defendants have a duty to pay for the repairs made to their respective insureds and claimants.  See Second Amended Complaint, ¶¶ 35, 43, 222, 313, 360, 361.  The conclusion that such averments are absent is demonstrably inaccurate.

Despite the presence of these allegations, the Report appears to try and create a dispositive issue by somehow distinguishing between an averment that an insurer has a duty to repair and an averment that an insurer has a duty to pay for repairs.

The distinction the Report attempts to make is a distinction without a difference.  This was specifically discussed in *Benchmark Construction*:

Auto–Owners acknowledges that it insured the site and, therefore, had a duty to pay for the repair work performed at the location. By not having to perform or pay for the repair work at Sephora, Auto–Owners realized a benefit. Auto–Owners still had a duty, to its unidentified insured, to pay for the repair work. Benchmark's performance of the repairs satisfied the duty owed by Auto–Owners and relieved it of its obligation to its insured. Therefore, the court DENIES Auto–Owners' Motion for Summary Judgment and Benchmark is entitled to pursue its claim on the merits of the case.

*Benchmark Const. LLC*, 2013 WL 3479682, at *4.

Under Utah law, it is recognized that an insurer is obligated to pay the claims of insureds and claimants. Such an obligation is not contingent upon an insurer performing the repair work itself. Whether or not a Defendant insurer even has the capacity to effect repairs itself is a dubious proposition as the Defendant insurers sell and service insurance policies and are not in the business of repairing collision damage.

If the Defendants wish to assert they have no duty to pay for repairs, they may do so as an affirmative defense, for which they bear the burden of pleading and proof. As the complaint asserts they do have such a duty, and the Court is required to accept this averment of fact as true, it would be error for the Court to presume application of a defense which contradicts the allegations of the complaint.

Further, as the averment that Defendants have a duty to pay for repairs to the vehicles of their respective insureds and claimants does not rise to the level of defiance of every day reality, the Court is not free to discard or disbelieve it. "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men,

or the plaintiff's recent trip to Pluto, or experiences in time travel." *Ashcroft,* 556 U.S. at 696 (internal punctuation omitted).

If the Defendants wish to assert they have the capacity to perform collision repair themselves, they may plead and prove that, as well.  The complaint does not speak to this particular sua sponte determination, but that is irrelevant.  The complaint alleges the work was performed by Plaintiffs, they are entitled to full payment for the services rendered and Defendants are the parties responsible for payment.  The Court is required to accept these averments as true, as they do not rise to level of being so fantastical as to defy every day reality and the Court may not discard or disbelieve them. "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Ashcroft,* 556 U.S. at 696 (internal punctuation omitted).

If the Defendants wish to assert that a consumer's choice of collision repairer is somehow without effect or may be subsumed by the insurer, that is also something the Defendants may plead and attempt to prove.  The complaint asserts consumers are entitled to select their own repairer and that choice must be honored by the relevant insurer.  The Court is required to accept these averments as true, as they do not rise to level of being so fantastical as to defy every day reality and the Court may not discard or disbelieve them.  "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Ashcroft,* 556 U.S. at 696 (internal punctuation omitted).

The Report therefore recommends a conclusion which is in violation of state authority and requires discrediting of Plaintiffs' allegations in breach of the Court's nondiscretionary duty to accept the allegations of the complaint as true absent a clear basis to apply the high level exception set forth in *Iqbal*.

2. <u>The Report errs in finding the complaint fails to allege Plaintiffs' services discharge Defendants' obligations to insureds and claimants</u>

Plaintiffs are uncertain if this statement was intended to have some additional import other than what it says.  Taking the statement at face value, Plaintiffs assert it is erroneous.  The complaint does include this very allegation:

360. Defendants collect millions of dollars of premiums and settle thousands of claims purportedly meeting obligations to insureds and claimants, but their obligations are to pay  amounts that restore vehicles to safe pre-accident conditions - not some lesser repair or amount.

361. Plaintiffs serve as the means through which Defendants purportedly meet such obligations.

As the allegation does appear in the complaint, the Report's conclusion to the contrary is demonstrably erroneous.

3. <u>The Report's conclusion the complaint does not contain an allegation Defendants failed to pay for the benefit conferred is erroneous</u>

The Report asserts the complaint does not contain any allegations the Defendants failed to pay for the benefit they received.  The Report bases this conclusion upon the secondary conclusion that because Plaintiffs had no reasonable expectation of full payment due to Defendants' course of conduct, then the Defendants have paid for the benefit received.  Both of these conclusions are erroneous for multiple reasons.

4.      Partial payment does not extinguish a claim for quantum meruit

The Report incorrectly asserts the Plaintiffs have been paid all they are entitled to receive because Defendants' unilateral course of conduct in refusing full payment renders Plaintiffs demand for full payment unreasonable.  The Report erroneously assumes many things which contradict the allegations of the complaint, the first of which is that partial payment and a defendant's refusal to pay in full somehow combine to extinguish a quantum meruit claim.

Partial payment and a course of conduct of unilateral refusal to make full payment does not extinguish a quantum meruit claim.  The Utah Supreme Court made that very clear in *EPIC*.  In *EPIC*, the defendant county utilized its own schedule of payment for the services rendered by the plaintiff physicians.  The defendant county consistently refused to make full payment over a course of several years.

The Utah Supreme Court refused to allow this as a defense to the physicians' claim for full payment under the quantum meruit restitution claim, noting the error of the trial court: "While ostensibly considering whether EPIC was entitled to the difference between the uncapitated Medicaid rate and the rates charged by EPIC, the implication of the district court's ruling is that the County has no legal obligation to reimburse EPIC physicians at all for medical services provided to county inmates."  *EPIC,* 167 P.3d at 1082.

The Utah trial court error is the same error committed in the Report.  It confuses entitlement to compensation with a purported lack of legal obligation of the Defendants to pay more than they chose to pay.  The Utah Supreme Court gave this no heed at all, ruling the plaintiff physicians were entitled to pursue payment under quantum meruit for the services they performed.  Under clear Utah precedent, the Report's conclusion, based solely upon arguments of Defendants, violates state law.

The Report erred in this respect but erred further by incorrectly assuming a defendant's refusal to make full payment after partial payment has been made extinguishes a claim.  This is contrary to well-established Utah law, including *EPIC*.  See also*, Bennett Leasing Co. v. Ellison*, 387 P.2d 246 (Utah, 1963), *Parrish v. Tahtaras*, 318 P.2d 642 (Utah, 1957), *Morris v. Russell*, 236 P.2d 451 (Utah, 1951).

As Utah authority clearly permits quantum meruit claims to go forward when partial payment has been made, the Report's conclusion is clear error.

5. <u>Utah authority has already established it is unjust to allow Defendants to retain the benefit they have received without making reasonable compensation</u>

The Report appears to be making the argument that because of Defendants' course of conduct it is not unjust for them to retain the benefit they received without making proper payment.  Again, this is an issue Utah authority has addressed and the result is directly contrary to the Report.

Utah law has made clear the difference between a cognizable restitution claim and meritless one is whether the benefit conferred upon the defendant was direct or merely incidental:

> Generally, unless such services enhance or benefit the property of the defendant or otherwise confer on him a direct benefit, they do not form the basis for a contract imposed by law because there is no 'unjust enrichment' as that term is used in law. Where such services operate to confer a direct benefit upon the defendant, they may be recoverable.

*Baugh*, 184 P.2d at 337.  The Utah Supreme Court made this point again in *Jeffs*:

> Even though the claimants intended to benefit from the improvements by occupying them during their lifetimes, the claimants' services still conferred a direct, not incidental, benefit on the UEP. Thus, we uphold the trial court's equitable remedy for all claimants, both those occupying land in Arizona and Utah.

*Jeffs*, 970 P.2d at 1248.

In *EPIC*, the Utah Supreme Court made clear that services performed which allow a defendant to execute a duty or obligation to a third party constitutes a direct benefit to the defendant, for which a plaintiff may seek restitution:

> While unjust enrichment does not result if the defendant has received only an incidental benefit from the plaintiff's service, this court has found that a large variety of items fall under the definition of "benefit," including an interest in money, land chattels, or choses in action; beneficial services conferred; satisfaction of a debt or duty owed by the defendant; or anything which adds to the defendant's security or advantage. . . . We acknowledge that EPIC provided a physical benefit to the treated inmates but the County also benefitted from EPIC's service. . . . These are real benefits that are sufficient to establish the first prong of a quantum meruit claim. . . . If EPIC proves its quantum meruit claim, it is entitled to the reasonable value of the services it provided.

*EPIC*, 167 P. 3d at 1086 (internal punctuation omitted).

In the context of insurance, the issue has been plainly decided–services performed which allow an insurer to discharge its duty to an insured constitute a direct benefit to the insurer for which restitution may be pursued:

> As the insurer for flood damage to the store, Auto–Owners had a duty to cover the cost of the repair work.
>
> This case is similar to [*EPIC*]. In that case, [EPIC] brought suit against Salt Lake County ("County") seeking compensation for the value of medical services it had provided to inmates held in the County jail. The County refused payment, claiming that the inmates, rather than the County, were the primary beneficiaries of the medical services. The Utah Supreme Court rejected that argument, finding that the County had a statutory duty to provide medical care to the inmates under subsection 1© of Utah Code Ann. § 17–50–319. *Id.* at ¶ 13. Because EPIC had performed a duty owed by the County, it had conferred a benefit on the County for which the County had refused to pay. The County was, therefore, unjustly enriched.
>
> Auto–Owners acknowledges that it insured the site and, therefore, had a duty to pay for the repair work performed at the location. By not having to perform or pay for the repair work at Sephora, Auto–Owners realized a benefit. Auto–Owners still had a duty, to its unidentified insured, to pay for the repair work. Benchmark's performance of the repairs satisfied the duty owed by Auto–Owners and relieved it of its

obligation to its insured. Therefore, the court DENIES Auto–Owners' Motion for Summary Judgment and Benchmark is entitled to pursue its claim on the merits of the case.

*Benchmark Const. LLC*, 2013 WL 3479682, at *3-4.

Utah authority unequivocally establishes that services performed which allow a defendant to execute an obligation to a third party constitutes a benefit to the defendant for which a quantum meruit action will lie.  It is further established that services performed which allow an insurer to fulfill an obligation owed to an insured/claimant constitutes a benefit to the defendant for which a quantum meruit action will lie.

Utah law has already established that Plaintiffs services constitute a direct benefit to the Defendants and that Defendants' retention of that benefit without just compensation constitutes unjust enrichment.  Plaintiffs are entitled to go forward on their claim of quantum meruit.  The Report's conclusion directly contravenes Utah authority and constitutes clear error.

6.    <u>Application of an affirmative defense to dismiss the quantum meruit claim constitutes reversible error</u>

Here, the Report concludes the Defendants are permitted to avoid liability on the unpaid balance because they have, due to their unilateral course of conduct, successfully refused to make full payment in the past.  As the facts asserted in the complaint are directly contrary to this conclusion, the Report perforce decides the issue upon reference to matters outside the four corners of the complaint.

An affirmative defense is any matter that serves to excuse the defendant's conduct or otherwise avoid the plaintiff's claim, but which is proven by facts extrinsic to the plaintiff's complaint.  *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007).

-17-

See also, *Green v. Amjak Enterprises, Inc.,* No. 2:06CV264FTM29SPC, 2006 WL 2265455, at *2 (M.D. Fla. Aug. 8, 2006)

Defendants unquestionably bear the burden of proof for affirmative defenses they may choose to assert. *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 93 (2008) and *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550-51 (11th Cir. 1990).

Here, the Report recommends dismissing the complaint based not upon the contents of the complaint, but upon the arguments forwarded in the Defendants' motions their successful course of conduct allows them to escape liability, past and future. The district court therefore decided the issue upon an avoidance of liability, an affirmative defense.

Ordinarily, a motion to dismiss may not be decided upon an affirmative defense, specifically because the trial court is required to accept the factual allegations of the complaint as true; a plaintiff is not required to negate an anticipated affirmative defense in a complaint. *Twin City Fire Ins. Co.*, 609 F. App'x 972, 976-77 (11th Cir. 2015). Only if the existence of an affirmative defense plainly and conclusively appears on the face of the complaint may a 12(b)(6) dismissal even be considered. *Id.*

The trial court may not, however, draw inferences or make factual conclusions in order to apply an affirmative defense as grounds for a 12(b)(6) dismissal. *Id.* The Report performs both of these prohibited things.

More than one affirmative defense utilizes course of conduct as an indicator of an avoidance of liability for a claim, most usually waiver and estoppel. That Defendants have acted consistently over time is wholly insufficient for a conclusion that either waiver or estoppel (or some other

affirmative defense) plainly appears on the face of the complaint in contravention of the unambiguous allegations of the complaint. It merely shows the Plaintiffs have considerable damages.

Under Utah authority, to constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it.  Intent to relinquish a right must be distinctly made. *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 942 (Utah 1993).  Capitulation gained by fraud, duress or coercion does not constitute a valid waiver. *Anglo-California Trust Co. v. Hall*, 61 Utah 223, 211 P. 991, 994 (1922).  See also, *Holmgren v. Utah-Idaho Sugar Co.*, 582 P.2d 856, 862 (Utah 1978).

Estoppel is a doctrine of equity purposed to rescue from loss a party who has, without fault, been deluded into a course of action by the wrong or neglect of another. *Morgan v. Bd. of State Lands*, 549 P.2d 695, 697 (Utah 1976). Mere silence over a period of time will not raise an estoppel where there is no legal or moral duty to speak. *French v. Johnson*, 16 Utah 2d 360, 361, 401 P.2d 315, 315 (1965).

These defenses rely upon the conduct of the plaintiff, not the unilateral conduct of the defendant, to determine whether a waiver or estoppel has been created.  Estoppel further requires a showing that a defendants has been harmed through detrimental reliance.

The complaint repeatedly avers facts contradicting any suggestion the Plaintiffs waived any legal rights. Nothing in the complaint suggests Plaintiffs affirmatively relinquished any legal right to pursue unpaid amounts for services rendered. On the contrary, the complaint asserts Plaintiffs did attempt to do so but efforts  to collect full payment were met with threats, economic coercion and boycotting.  The district court is required to accept these facts as true, instead of disregarding them to draw the negative inference an avoidance of liability was justified.

While facts expressly asserted negate application of a waiver affirmative defense, the complete absence of facts relative to estoppel fully negate its application, as well. There is nothing in the complaints from which the court could reasonably conclude the Defendants changed their position through detrimental reliance upon the conduct of the Plaintiffs and suffered harm as a result. The complaint alleges there has been no change in Defendants' conduct at all; they have continued to refuse to make full payment, backed up with threats, economic coercion and boycotting for failing to quietly submit to Defendants' wrongful conduct.

No affirmative defenses have been pled. Both of these defenses are affirmative ones and <u>must</u> be pled in Defendants' answers and they bear the burden of proof for either or both:

> © Affirmative Defenses.
>
> (1) In General. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:
>
> • estoppel;
> . . .
> • waiver.

Fed. R. Civ. P. 8.

There have been no answers filed, no defenses asserted, no discovery conducted, no evidence presented to the court. The Report simply creates an affirmative defense on behalf of the Defendants, deems it worthy without any evidence, excuses the Defendants from their burden of proof and recommends dismissing the claim on the merits.

Plaintiffs submit this constitutes a fundamental error of law which, respectfully, must be not be adopted as it is reversible error for a district court to "collapse discovery, summary judgment[,]

and trial into the pleading stages of a case." *SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 434 (4th Cir. 2015).

> 7.   The Report's conclusion regarding Plaintiffs' purported options are erroneous and constitute substantial repeated breaches of extant authority

The Report further concludes the quantum meruit claim must be dismissed because Plaintiffs had options they did not exercise–Plaintiffs could have negotiated better compensation, or Plaintiffs could have entered into contracts with Defendants prior to commencing repairs.

Each of these suggestions breach multiple points of authority on multiple grounds.

> a.   Negotiation is not an element of a quantum meruit claim under Utah law

The Report states the Plaintiffs could have negotiated their prices with Defendants and therefore no claim for quantum meruit may lie.  This is incorrect.

Utah does not include as an element of a claim that a plaintiff have negotiated or attempted to negotiate prior to asserting a claim for quantum meruit.  It is simply not required.  By adopting the position Plaintiffs could have negotiated but did not and therefore the claim must be dismissed, the Report creates an element of state law which does not exist and purports to dismiss it for failing to abide by the non-existent element.  This violates well-established authority that the district court must apply the law of the state as that state has determined it, not as the district court prefers.  *West*, 311 U.S. at 236-237, *Watson v. Dugger*, 945 F.2d 367, 369 (11th Cir. 1991).

Beyond negotiation not being an element of a quantum meruit claim, there exists no generalized duty upon a seller of goods or services to bargain, ever. The national judiciary has recognized for over a century the inherent authority of a private business to set its own prices:

The right of each competitor to fix the prices of the commodities which he offers for sale, and to dictate the terms upon which he will dispose of them, is indispensable to the very existence of competition. Strike down or stipulate away that right, and competition is not only restricted, but destroyed.

*Whitwell v. Continental Tobacco Co.*, 125 F. 454, 459-460 (8th Cir. Minn. 1903).   See also, *Brosious v. Pepsi-Cola Co.*, 59 F. Supp. 429, 431 (D. Pa. 1945), *Rolley, Inc. v. Merle Norman Cosmetics, Inc.*, 129 Cal. App. 2d 844, 849 (Cal. App. 1954),  *First Nat'l Bank v. Missouri Glass Co.*, 169 Mo. App. 374, 397-398 (Mo. Ct. App. 1912).

What Plaintiffs could, theoretically, have done differently, such as bargaining, does not transmute into a compulsory element, nor to dismissal due to its absence.  The Plaintiffs are legally permitted to set their own prices. They are not required to bargain or discount their prices, nor justify a failure or refusal to do so.  The Report nonetheless creates the element of a duty to bargain, which it is not permitted to do under longstanding authority.

Nor may the court dismiss a claim for failing to allege facts relevant to a non-existent element of a claim.  See, e.g.,  *ISystems v. Spark Networks, Ltd.*, 428 F. App'x 368, 372, FN 4 (5th Cir. 2011)("Contrary to Spark defendants' argument, establishing irreparable injury or inadequacy of remedies at law is not an element of a claim under § 1114(2)(D)(v), and thus ISystems' failure to allege facts sufficient to satisfy the requirements for an injunction is irrelevant.") and *Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 495-96 (S.D. Fla. 1996).

        b.      There is no possibility of negotiation even if Plaintiffs were inclined to do so

There is no duty or obligation to negotiate.  However, even if Plaintiffs were inclined to negotiate, they could not do so.  As was set forth in the complaint, payment is made on a take-it-or-

leave-it basis.  Refusal to simply "take it" are met with threats, economic coercion, steering and similar punishment, which the Report recognized.

The Report finds these allegations "not plausible."  However, that conclusion is not within the court's discretion.  "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Ashcroft,* 556 U.S. at 696 (internal punctuation omitted).

Asserting payment is parceled out under threat of retaliation on a take-it-or-leave-it basis plainly and clearly does not reach the level of fantastical claims in defiance of reality.  The Court is not permitted to disbelieve them, is required to accept these allegations as true, and draw all inferences favorable to the Plaintiffs.

Additionally, under Utah law, the question of whether a reasonable alternative exists is one of fact for jury determination. *Andreini v. Hultgren*, 860 P.2d 916, 923 (Utah 1993).  The Court is thus prohibited from relying upon the purported existence of alternatives, such as negotiating, to base or inform its recommendation that Plaintiffs' claim for quantum meruit must be dismissed.

> c.   Plaintiffs are not required to enter contracts with Defendants prior to commencing repairs

In addition to negotiating, the Report concludes Plaintiffs could have entered contracts with the Defendant insurers prior to commencing repairs.  This is erroneous for two reasons.

An express contract is not an element of a quantum meruit claim under Utah law.  It is simply not required.  By adopting the position Plaintiffs could have entered separate contracts with the

Defendants but did not and therefore the claim must be dismissed, the Report creates an element of state law which does not exist and purports to dismiss it for failing to abide by the non-existent element. This violates well-established authority that the district court must apply the law of the state as that state has determined it, not as the district court prefers. *West*, 311 U.S. at 236-237, *Watson v. Dugger*, 945 F.2d 367, 369 (11th Cir. 1991).

Additionally, the Report highlights what has continued to be a willful misunderstanding of the repair triangle. Consumers enter agreements with the Plaintiffs for the repair of vehicles. The Defendant insurers enter agreements with their respective insureds to pay for repairs, either for repairs to the insureds' vehicles or the vehicles of third parties due to liability of the insured for damages. Utah law imposes the obligation to pay for such repairs regardless of which body shop is selected by the consumer. This obligation to pay is not contingent upon the insurer entering a contract with the repair shop–it exists independent of any agreement or lack thereof between any Defendants and any Plaintiff and may not be waived.

To put it plainly, the consumer has the choice of repair shop. The insurer Defendants have a non-discretionary duty to pay for repairs. As the Defendants have no discretion in either selection of repairer or obligation to pay for repairs, a contract between the repairer and the insurer is completely unnecessary and would require the Plaintiffs to compromise their obligations to their respective customers.

As the complaint sets out in detail, the Defendant insurers' actions extend beyond merely refusing to pay Plaintiffs what "they think they deserve," as the Report finds. The Defendant insurers consistently refuse to pay for necessary repairs. If a repair procedure is necessary, no amount of negotiation is going to make it less necessary and contracting with an insurer for anything

less than full, complete and safe repairs requires the Plaintiffs to breach their obligations to their customers.

If there exists some Utah authority requiring the Plaintiffs to breach their obligations to consumers in order to contract away necessary repairs so as to avoid payment disputes for the work performed, Plaintiffs request this authority be identified.

Additionally, under Utah law, the question of whether a reasonable alternative exists is one of fact for jury determination. *Andreini,* 860 P.2d at 923. The Court is thus prohibited from relying upon the purported existence of alternatives, such as entering separate contracts with the Defendants, to base or inform its recommendation that Plaintiffs' claim for quantum meruit must be dismissed.

8.    Whether or not Plaintiffs believed they would receive full payment for services rendered is irrelevant and necessitates a violation of Utah law

The Report decrees the quantum meruit claim must be dismissed because "Plaintiffs could not, under any level of reasonableness, have expected to be paid more than what they received." Whether or not Plaintiffs believed they would be paid more is wholly irrelevant to a quantum meruit claim.

Subjective belief that full payment will be forthcoming is not an element of a quantum meruit claim under Utah law. All that is required is that Plaintiffs confer a benefit upon Defendants, that Defendants are aware of the benefit and that it would be unjust for Defendants to retain the benefit without compensation therefore. That is all that is required. If there is a requirement of subjective belief as to amount of compensation, the Report fails to cite any authority to that effect.

As *EPIC* makes clear, a defendant's unilateral choice as to the amount of payment does not work to extinguish the legal rights of a plaintiff. The physicians in *EPIC* received the payment the

County chose to dole out over the course of several years and attempts to collect outstanding balances were refused.  That defendants refused full payment for a number of years made no difference–a course of conduct the EPIC physicians were no doubt aware of as they sued for unpaid balances over those same years– the Utah Supreme Court stated the physicians were permitted to pursue their quantum meruit claim.  Course of conduct is not a recognized avoidance to liability.

The Report's reliance upon subjective belief (or lack of objective belief) as to amount of compensation directly violates extant authority, both Utah state law and Supreme Court authority on restitution.  As set forth in detail above, Utah authority has already established Plaintiffs services as set forth in the complaint constitute a benefit to the Defendants and, because Utah law also holds it is a direct benefit, it is therefore unjust for Defendants to retain that benefit without compensation.  All that remains is a determination of compensation.

Compensation is determined by the reasonable value of Plaintiffs' services and that value is a question of fact.  *The Poznan*, 274 U.S. 117, 123, 47 S. Ct. 482, 485, 71 L. Ed. 955 (1927), *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1017 (Utah, 2015)(trial court erred by refusing to allow jury determination of reasonable value of services rendered*)*, *Hatch v. Sugarhouse Fin. Co.*, 20 Utah 2d 156, 157, 434 P.2d 758, 759 (1967)(a party is "entitled to have its day in court in respect to the quantity and the reasonable value of the services rendered..."), *Foulger* v. McGrath, 34 Utah 86, 95 P. 1004, 1005 (1908) (reasonable value of labor and material used to construct buildings properly submitted to jury on theory of quantum meruit).

Utah has long and strenuously disapproved dismissal of restitution claims prior to the presentation of any evidence:

-26-

> Surely the petitioners, as between them and the widow and children, were entitled to their day in court upon the question as to their right to compensation, and the amount thereof, either, under their contract of employment as found by the referee, of a contingent attorney's fee of 50 per cent., or on a quantum meruit for the reasonable value of the services rendered by them. But the court summarily deprived them of such a hearing, and without pleadings or an issue, or evidence, or an opportunity to be heard, judicially considered and determined the rights of the petitioners in such particular, when clearly no such question was juridically presented and could not judicially be considered or decided. That such adjudication, on the face of the record, is wholly unsupported by the information or accusation and clearly without the issues, and hence the judgment founded upon it a nullity and subject to attack whenever and wherever brought in question, cannot be gainsaid.

*In re Evans*, 42 Utah 282, 130 P. 217, 229 (1913).

The Report performs exactly what Utah and the Supreme Court prohibit, rendering a decision on the value of services prior to discovery, prior to trial and, most importantly, with no evidence whatsoever before it. At best, the Report assumes Plaintiffs have received reasonable value for their services. But such an assumption has no factual basis, no evidence has been submitted as to the value of Plaintiffs' work and there is therefore no possibility the Report could have reached a rational conclusion.

At worst, the Report assumes Plaintiffs got what they deserve for doing business with the Defendants knowing they would be cheated. This appears to be an inverse form of judicially created caveat emptor. However, under Utah law, there is no requirement that a plaintiff believe they will be paid "more than what they received." Under Utah law, a quantum meruit plaintiff is entitled to the reasonable value of their services. In the absence of evidence establishing the reasonable value of services and a jury determination of that value, the Report commits numerous errors of law.

9. <u>The Report's conclusion as to the existence of contracts between Plaintiffs and Defendants breaches Utah law and federal rules</u>

The Report concludes that each repair constituted a de facto contract between the individual Plaintiffs and the individual Defendants.  This conclusion violates multiple laws and rules of federal analysis.

The complaint repeatedly denies the existence of any contracts between any Plaintiff and any Defendant.  The Report, however, unequivocally concludes to the contrary based upon the arguments of Defendants in their motions to dismiss.  In fact, the Report states it is basing this conclusion upon the arguments of Defendants in their motions.

This is a breach of the court's duty to accept the allegations of the complaint as true and to refrain from adopting the arguments of defendants. See below.  The Report wholeheartedly abandons these requirements to adopt without limitation the Defendants' arguments which directly contradict the allegations of the complaint.

Further, the Report's acceptance of the purported existence violates the Defendants' burden of proof as to an affirmative defense.  As the complaint specifically denies the existence of any contracts between any Plaintiff and any Defendant, the Report can only reach the conclusion by "facts" extrinsic to the complaint which renders the existence of a contract an affirmative defense. The Defendants have the burden of actually pleading and proving the existence of a contract, application of the contract and the enforceability of any contract.  The Defendants have done none of this and the court is not permitted to omit these steps in the face of conflicting allegations in the complaint.

Further, it is elemental that a valid, enforceable contract requires a meeting of the minds. *Harris v. Albrecht*, 86 P.3d 728, 730 (Utah, 2004). This means that the parties have "arrive[d] at an agreement as to all of the elements which are essential to [the] ... contract." *Hone v. Advanced Shoring & Underpinning, Inc.*, 291 P.3d 832, 839 (Utah Ct. App. 2012). A meeting of the minds is fundamental to contract formation and in the absence of intent to contract, there is no enforceable contract. *Richard Barton Enterprises, Inc. v. Tsern*, 928 P.2d 368, 373 (Utah 1996)(citing Corbin on Contracts § 4.3, at 569 (rev. ed. 1993)). A contract cannot exist without a meeting of the minds. *Prince, Yeates & Geldzahler v. Young*, 94 P.3d 179, 183 (Utah, 2004).

A binding contract can exist only where there has been mutual assent by the parties manifesting their intention to be bound by its terms. Furthermore, a contract can be enforced by the courts only if the obligations of the parties are set forth with sufficient definiteness that it can be performed. *Bunnell v. Bills*, 13 Utah 2d 83, 86, 368 P.2d 597, 600 (1962).

In the present matter, it cannot be determined that any contract much less a series of contracts exists. The allegations of the complaint unambiguously refute the existence of any contract. The Defendants have not produced any purported contracts, have not advised of any terms of the purported contracts nor produced any evidence the Plaintiffs voluntarily agreed to the undisclosed terms of the purported contracts. It is therefore unambiguous error for the court to assume the existence of binding contracts, particularly where, as here, the court is prohibited from accepting the arguments of Defendants upon motions to dismiss.

Further still, even if a contract ever existed, duress is a valid defense to its enforcement. The Utah Supreme Court affirmatively adopted sections 175 and 176 of the Restatement (Second) of Contracts, which provide a contract may be voided if a party's manifestation of assent is induced by

an improper threat by the other party that leaves the victim no reasonable alternative. *Andreini,* 860 P.2d 916 at 921(internal punctuation omitted).

A threat is improper if, inter alia, the resulting exchange is not on fair terms, and the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat. *Id.*

As set out in the complaint*,* the Plaintiffs' receive payment on a take-it-or-leave-it basis, many repair procedures are refused payment in their entirety, arbitrary limits are placed on paint and materials and hourly labor rates are artificially suppressed. The Defendants manipulate data bases and arbitrarily reduce labor hours, as well as several other methods of underpaying repairs. The result is Plaintiffs work at a loss on many repairs. The nonpayment and underpayment is backed up by threats of retaliation, steering, economic harm and defamation. Paraphrasing the Report, the court can not, under any level of reasonableness, expect the Plaintiffs to have voluntarily agreed to terms that cost them money and threaten their economic ability to remain open for business.

The Court is required to accept these allegations as true as they do not reach the level of demonstrable, facial irrationality for disregarding them as set out by the Supreme Court. How such an arrangement can, by any level of reasonableness, be considered an exchange on fair terms is left without explanation by the Report.

As also set out in the complaint, up to ninety five percent (95%) of Plaintiffs' business originates from customers for whom the Defendants are responsible to make payment for repairs. The Plaintiffs have no reasonable alternative but to accept the custom and trade of insurance-paying customers, the only alternative being to close their doors.

The Court is required to accept these allegations as true as they do not reach the level of demonstrable, facial irrationality for disregarding them as set out by the Supreme Court.  How such choice – bankruptcy or submission– can, by any level of reasonableness, be considered an exchange on fair terms is left without explanation by the Report.

As further set out in the complaint, the Defendants have engaged in the described methods of nonpayment and underpayment, enforced by economic coercion and threats, for a number of years.  The Court is required to accept these allegations as true as they do not reach the level of demonstrable, facial irrationality for disregarding them as set out by the Supreme Court.

By any yard stick, the Defendants' behavior set out in the complaint meets the Utah definition of an improper threat, as the effectiveness of the economic threats is significantly increased by the Defendants prior unfair dealings.

Further still, the issue of duress is one of fact for jury determination.  *Id.* at 922.

The Report ignores all of these facts, ignores authority which requires it to accept these facts, and ignores Utah authority holding any contract entered under the circumstances described in the complaint would be void.

The Report also bases it's contract conclusion upon the failure of Plaintiffs' to rebut the Defendants' arguments as to the existence of contracts.  Respectfully, this is inaccurate.  As shown on page 23 of Plaintiffs' Response, Plaintiffs' affirmative incorporated by reference the response filed in companion case, *Brewer Body Shop v. State Farm, et al.*  That response included substantial discussion of Plaintiffs' objection to the notion any enforceable contract exists.  Plaintiffs also point out the complaint affirmatively denies the existence of any contracts between any Plaintiff and any Defendant.  Even if Plaintiffs had not responded to the motion to dismiss, the Court is still required

to accept the allegations of the complaint as true and determine from the contents of the complaint whether Plaintiffs had alleged the elements of a quantum meruit claim, not the Defendants' arguments on motion.

In sum, the Report errs as a matter of federal procedure by affirmatively adopting Defendants alternative explanations, affirmatively refusing to accept the allegations of the complaint, violating clear Utah authority on the formation of a valid contract, applying an affirmative defense which does not plainly appear on the face of the complaint and failing to give effect to Utah law of duress.

10.   The complaint does not contain any shotgun pleading

The Report further concludes the complaint must be dismissed because it contains impermissible shotgun pleading.  Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense. *Wagner v. First Horizon Pharm. Corp*., 464 F.3d 1273, 1279 (11th Cir. 2006).

No such incorporation is present anywhere in the complaint.  The Report attempts to manufacture shotgun pleading by asserting, not that any such incorporation actually exists within the complaint, but that the quantum meruit claim "is apparently intended to include all of the preceding averments. . . ."

Thus, though no incorporation of counts or factual allegations exist, the Report infers the existence.  The Report cites no legal authority permitting it to infer improper pleading.  Further, such an inference is a direct contravention of the nondiscretionary duty to draw all inferences favorable to the Plaintiffs.  Without authority and in violation of legal obligations, the Report creates a problem which does not exist.  This is reversible error.

11.     Group pleading

The Report again incorrectly construes the allegations of the complaint to dismiss upon impermissible "group pleading," on the ground that it "lacks the individualized factual allegations necessary to inform Defendants and the Court concerning the transactions upon which it is based."

The degree of specificity the Report attempts to compel is <u>not required</u> by the Federal Rules of Civil Procedure.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is  *678 entitled to relief." As the Court held in Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations [.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009),  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), *Speaker v. U.S. Dep't of Health &*

*Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010).

Not only are the Plaintiffs not required to list the name of each consumer with the corresponding under- or non-payment for each Defendant at each Plaintiff's business, the Court has previously threatened plaintiffs in a companion case with sanctions specifically for providing too much detail and thereby "unnecessarily" lengthening the complaint. The detail demanded by the Report would not only be unnecessary under federal notice pleading requirements, it would cause the complaint to run in excess of <u>a thousand pages</u> and would per se result in the Plaintiffs being ordered to engage in the very behavior the Court has previously found sanctionable.

Ordering a party to engage in sanctionable conduct is not permissible.

The Plaintiffs here have not engaged in discovery. They have not failed to meet their burden of proof as the Report inappropriately transfers the burden of proof to the complaint. A complaint

is not required to set forth evidence, prove the case or otherwise provide proof of the plaintiff's right to recovery, as the Eleventh Circuit has previously recognized in *Speaker,* 623 F.3d at 1386.

The complaint alleges that each and every Defendant has failed to make full payment for repairs to the vehicles of their respective insureds and claims, alleged the Defendants refuse to pay at all for necessary processes and procedures and included as an exhibit to the complaint a list of those processes and procedures and provided detailed discussion of specific examples of such, facts which provide a factual basis for the allegations of the complaint.

When the complaint so alleges, it is permissible for the Plaintiffs to utilize the shorthand term "the Defendants." *Jackson v. Bank of Am., NA*, 578 F. App'x 856, 860 (11th Cir. 2014), *Crespo v. Coldwell Banker Mortgage*, 599 F. App'x 868, 872 (11th Cir. 2014), *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997). See also, *Carl's Furniture, Inc. v. APJL Consulting, LLC*, No. 15-60023-CIV, 2015 WL 1467726, at *5 (S.D. Fla. Mar. 30, 2015), *Sprint Sols., Inc. v. Cell Xchange, Inc.*, No. 8:14-CV-00233-T-27, 2015 WL 1001272, at *2 (M.D. Fla. Mar. 6, 2015), *Sprint Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014).

The practice only runs afoul of the applicable pleading standard where it results in a complaint that fails to give each defendant notice of the claims against it. *Sprint Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d at 1227.

The Report disingenuously finds the complaint fails to give each defendant notice of the claims against them. However, not even the Defendants argue they do not know what are the claims against them. The extensive discussion of the tortious interference claim by Defendants in their multiple motions to dismiss shows they do have a complete understanding of the claims against them

and when such is shown, the complaint may not be dismissed on this ground. *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013).

Further, the Court has previously accepted the allegations of the complaint as satisfactorily setting out the allegations of a tortious interference claim. Suggesting otherwise now impugns the law of the case.

Certainly the detail with which the Report sets out the allegations of tortious interference make clear it understands the allegations against the Defendants, having devoted multiple pages to discussing those allegations. It simply chooses not to believe them, which it is not permitted to do.

## TORTIOUS INTERFERENCE

12.   <u>The Report's conclusions</u> <u>violates the law of the case</u>

The only basis given by the Court in previously dismissing Plaintiffs' tortious interference claim was Plaintiffs' purported failure to sufficiently identify which Defendants interfered with which Plaintiffs' business prospects. *Alpine Straightening Sys.*, 2015 WL 1911635, at *1 (M.D. Fla. Apr. 27, 2015). No other basis for dismissal was provided. Plaintiffs were provided the opportunity to amend and did so, expressly clarifying that each Defendant had tortiously interfered with the business prospects of each Plaintiff. Plaintiffs even provided examples of such interference, both successful and unsuccessful.

Plaintiffs were specifically told all other allegations were sufficent to set forth a claim for tortious interference:

> Plaintiffs allege that "Defendants have employed improper means since steering is contrary to Utah statutory, regulatory, and/or common laws [sic]" (FAC, ¶ 117). The references to unidentified provisions of Utah law are unhelpful, and Plaintiffs should provide specificity or omit them from any subsequent amended complaint. But, and

contrary to the arguments of the State Farm Defendants, Plaintiffs need not identify the specific statute, regulation, or common law rule Defendants conduct violated in order to state a claim. See *Johnson v. City of Shelby, Mississippi*, 136 S.Ct. 346, 346 (2014) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). Plaintiffs have alleged conduct-including disparagement of their businesses-that, if proven, would constitute improper means of interference (See FAC, 89–92).

*Id.* at *7 (M.D. Fla. Apr. 27, 2015).

Despite this, for unidentified reason, the current Report decides the Plaintiffs have failed to sufficiently allege conduct constituting tortious interference.

Having previously decided Plaintiffs' had pled the claim sufficiently under Utah state law, the Report's contrary conclusion violates the law of the case. An issue decided at one stage of a case is binding at later stages of the same case. *Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.*, 210 F.3d 1348, 1350 (11th Cir. 2000), *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997).

A party is justifiably entitled to rely upon the prior rulings of the court. "To hold otherwise would be to permit parties the option of deciding which orders to obey, or conversely to condemn parties to the instability of guessing which orders to abide and which to ignore. This will not do." *In re Demos*, 57 F.3d 1037, 1039 (11th Cir. 1995). See also, *In re Moss*, 258 B.R. 391, 399 (Bankr. W.D. Mo.) aff'd, 266 B.R. 408 (B.A.P. 8th Cir. 2001) aff'd, 289 F.3d 540 (8th Cir. 2002) ("For the integrity of the courts and the bankruptcy process, it is imperative that parties be able to rely on orders of the court.").

Allowing the tortious interference claim to be dismissed upon the grounds asserted in the Report would be particularly inequitable. The Plaintiffs had already been told the allegations of the

complaint were sufficient to set forth a tortious interference claim and only clarity regarding which

Defendant interfered with which Plaintiff was required.  The Plaintiffs therefore did not amend the

overall allegations of tortious interference.  Having been specifically told the allegations were

sufficient, the Plaintiffs relied upon this ruling.

Furthermore, the current Report alleges several additional purported problems with the

complaint, all of which were raised in previous motions to dismiss and all of which could have been

ruled on by the Court a year ago.  The Court did not do so and Plaintiffs therefore had no reason to

believe anything other than what was in the Court's order needed to be addressed.

The Plaintiffs amended the single pleading defect identified by the Court.  To dismiss with

prejudice under the present circumstances is to punish Plaintiffs for actually believing the Court's

prior rulings and acting in conformity therewith.  Plaintiffs submit such a result–punishing a party

for relying upon the Court's written word–substantially perverts the ends of justice and constitutes

reversible error.

### 13    The Report errs in finding improper means requires a private right of action under an identified state statute

The Report reasons, based directly upon argument of Defendants, that Plaintiffs' tortious

interference claim must fail because the statute upon which the claim is predicated precludes a

private right of action.  This is an erroneous conclusion.

A plaintiff may establish tortious interference by showing a defendant's interference was

effected through improper means.  Improper means are present where the means used to interfere

with a party's economic relations are contrary to law, such as violations of statutes, regulations, or

recognized common law rules. Improper means include violence, threats or other intimidation, deceit

or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.  *Keith v. Mountain Resorts Dev., L.L.C.*, 337 P.3d 213, 227.

The Report recognized this authority but, again based upon the urging of Defendants, decided that a violation of statute cannot be used to show improper means unless that statute itself creates a private right of action for its violation.  Unfortunately, no such requirement exists in Utah law and none of the authority cited stands for that proposition.

Each case cited by the Report were instances where a plaintiff sought relief for a direct violation of the statute itself.  *Cannon v. Travelers Indem. Co.*, 994 P. 2d 824 (Utah Ct. App. 2000), *Brockbank v. JPMorgan Chase Bank, N.A.*, 2012 WL 1142933 (D.Utah Apr. 4, 2012).  Not even *Espinoza v. Gold Cross Services, Inc.,* 234 P.3d 156 (Utah Ct. App. 2010), which the Report quotes, makes this statement.  Importantly, what the Report omits from its quote is the definitive statement included in that case: "Plaintiffs' unjust enrichment claim fails not because Gold Cross complied with HIPAA—a question on which we express no opinion—but because HIPAA has no application here."  *Id.* at 159.  *Espinoza* was not predicated upon a requirement that a statute contain a private right of action before it may stand as the violation of statute referenced in tortious interference law.

In no authority from Utah have Plaintiffs been able to locate a single instance where a tortious interference claim was dismiss for the reasons stated in the Report.  None.  As Plaintiffs are suing for tortious interference and not for violation of the designated statute, whether or not Plaintiffs could pursue a direct claim for violation of the statute and regulations is wholly irrelevant.

14.   Defendants' actions come within the definition of improper purpose as defined by Utah law

For reasons uncertain, the Report recommends dismissal of Plaintiffs tortious interference claims on the grounds discussed above.  However, even if the conclusion reached by the Report were an accurate reflection of Utah law, it would still be inappropriate to recommend dismissal as violation of statute is not the only behavior constituting improper means.  Improper means includes violations of recognized common law rules, threats or other intimidation, deceit or misrepresentation, defamation or disparaging falsehood.

Rather than evaluate the facts asserted as a whole, which the Court has previously ruled constitute sufficient allegations of tortious conduct, the Report chose instead to ignore the allegations of the complaint and instead to pick apart the examples of Defendants' tortious interference instead.

The Report makes several unsupported findings, such as finding factual allegations merely conclusory.  For example, the Report discards descriptions of the effect of Defendants' actions as merely conclusory ("Pressured and coerced" are conclusions, unsupported by facts.")  This is an incorrect holding as to what constitutes a conclusory statement.

Improper means under Utah law includes threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.  Many of these require invocation of an emotional response by the consumer with whom a defendant interferes.  Under the Report's conclusion, no defendant could ever be held liable for certain actions because the Report would classify the expression of the result of those actions as merely conclusory.  If the Court is aware of magic words to express feelings of coercion, duress, feeling threatened or intimidated without actually saying "I was coerced/under duress/felt threatened/intimated," the

Plaintiffs will return to the witnesses who provided these statements of their encounters with the various insurers and ask they rephrase their experiences in words more acceptable to the Court.

The Report additionally dismisses the individual examples of tortious interference on the ground that the example fails to establish a Plaintiff suffered an actual injury as a result of the Defendant's actions.  Plaintiffs respectfully submit this is an improper conclusion.

The Report seems to be requiring magic words and in doing so is breaching its obligation to draw all reasonable inferences in favor of the Plaintiffs.  For example, in booting the example of Jayme Montgomery, where Defendant Farmers specifically told her she would have to take her car to another repairer because Plaintiff Perks was not on their preferred list, the Report concludes this does not count because "Plaintiffs have not alleged an injury suffered by Perk's Auto as a result of Farmers' actions.  Plaintiffs failed to plead facts showing a causal connection between the conduct alleged and any resulting damages."

It is true, this and other examples do not specifically state the Plaintiff lost the customer due to a Defendant's interference.  Perhaps the examples could have been more artfully drafted. However, artless or artful, the Court is still required to draw all reasonable inferences in favor of the Plaintiff.  The Court is required, at the motion to dismiss stage, to resolve any perceived ambiguities in favor of the Plaintiffs with final resolution the sole province of the jury. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012).

The Report chooses to go in the opposite direction.  Faced with the stated facts: "However, when [Ms. Montgomery] expressed this choice [of Perks] to her insurer Farmers, she was told that Perk's was not on their preferred list and she had to take her vehicle to ABRA.  She says she felt forced to use ABRA because of Farmers' statement to her," the Report chooses to interpret this to

mean that Perks did not lose Ms. Montgomery's business.  In making that decision, the Report fails to draw reasonable inferences in favor of the Plaintiffs.

The Report performs this repeatedly–finding fault for failing to use magic words.  That is impermissible.  *Pickett v. Williamson*, 2015 WL 2450767, at *3 (N.D. Ala. May 22, 2015), *Witt v. Howmedica Osteonics Corp.*, 2014 WL 1330840, at *2 (S.D. Fla. Mar. 28, 2014), *Latham v. Precision Strip, Inc.*, 2013 WL 6196105, at *3 (N.D. Ala. Nov. 27, 2013).

The purpose of a complaint is to put a defendant on notice as to the allegations against it and provide sufficient support for those allegations.  It is not required that a plaintiff win its case on the complaint.  A complaint is not required to set forth evidence, prove the case or otherwise provide proof of the plaintiff's right to recovery, as the Eleventh Circuit has previously recognized in *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010).

If that were the case, there would be no need for discovery or trial.

The Report also suffers from inconsistency.  In the Report and Recommendation issued in the companion case *Brewer Body Shop v. State Farm,* 6:14-cv-6002, Doc. 107, pp. 10-11, the Report recognized:

> But, the amended complaint alleges that Defendants do not guarantee repairs regardless of who does the work (Id. at ¶¶ 285-286). Assuming this to be true, the statements by Nationwide and Liberty Mutual that they would guarantee work performed by their preferred shops was misleading and false.  These Defendants' false statements could plausibly prevent the formation of business relationships. It is also plausible to infer that is exactly what Defendants intended. Cf. *Truslow v. State*, 31 S.W. 987 (Tenn. 1895) ("The law presumes a man intends what he does, and the usual and natural consequences of his acts.").

Yet in this case, the Report completely changes course, ignoring the allegations of the complaint that Defendants do not guarantee work regardless of which shop performs it, and decides

that if Defendants say something different in their motions to dismiss, that is what must be true.  The Report offers no explanation for this about-face, or why false statements are only misleading in Tennessee, not Utah.

In sum, the Report contradicts prior Order of the Court, contradicts its own findings in other cases, imposes a "magic words" requirement, improperly discredits witness statements as merely conclusory, and generally breaches its nondiscretionary duty to accept the factual allegations of the complaint as true.

15.   The complaint does not include shotgun pleading

As with quantum meruit, the Report decides the complaint is an improper shotgun pleading. Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).

No such incorporation is present anywhere in the complaint.  The Report attempts to manufacture shotgun pleading by asserting, not that any such incorporation actually exists within the complaint, but that the complaint "consist[s] of 376 paragraphs which include averments concerning the antitrust, quantum meruit and conversion counts.  This is another reason why the tortious interference count should be dismissed."

Thus, though no incorporation of counts or factual allegations exist, the Report infers the existence.  The Report cites no legal authority permitting it to infer improper shotgun pleading. Further, such an inference is a direct contravention of the nondiscretionary duty to draw all inferences favorable to the Plaintiffs.  Without authority and in violation of legal obligations, the Report creates a problem which does not exist.  This is reversible error.

16.   Group pleading

The Report again incorrectly construes the allegations of the complaint to dismiss upon impermissible "group pleading."  As above, the Report finds the allegations of the complaint not credible that each and every Defendant engages in identical forms of tortious interference.  Again, as above, that is not a credibility determination within the court's discretion to make.

The complaint alleges that each and every Defendant has engaged in tortious interference with respect to each Plaintiff,  and provided specific examples of that interference, facts which provide a factual basis for the allegations of the complaint.

When the complaint so alleges, it is permissible for the Plaintiffs to utilize the shorthand term "the Defendants." *Jackson v. Bank of Am., NA*, 578 F. App'x 856, 860 (11th Cir. 2014),  *Crespo v. Coldwell Banker Mortgage*, 599 F. App'x 868, 872 (11th Cir. 2014), *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997).  See also, *Carl's Furniture, Inc. v. APJL Consulting, LLC*, No. 15-60023-CIV, 2015 WL 1467726, at *5 (S.D. Fla. Mar. 30, 2015),  *Sprint Sols., Inc. v. Cell Xchange, Inc.*, No. 8:14-CV-00233-T-27, 2015 WL 1001272, at *2 (M.D. Fla. Mar. 6, 2015), *Sprint Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014).

The practice only runs afoul of the applicable pleading standard where it results in a complaint that fails to give each defendant notice of the claims against it. *Sprint Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d at 1227.

The Report disingenuously finds the complaint fails to give each defendant notice of the claims against them.  However, not even the Defendants argue they do not know what are the claims against them.  The extensive discussion of the tortious interference claim by Defendants in their multiple motions to dismiss shows they do have a complete understanding of the claims against them

-43-

and when such is shown, the complaint may not be dismissed on this ground. *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013).

Further, the Court has previously accepted the allegations of the complaint as satisfactorily setting out the allegations of a tortious interference claim. Suggesting otherwise now impugns the law of the case.

Certainly the detail with which the Report sets out the allegations of tortious interference make clear it understands the allegations against the Defendants, having devoted multiple pages to discussing those allegations. It simply chooses not to believe them, which it is not permitted to do.

17.     <u>The Report breaches the mandatory standard of review under federal authority</u>

The trial court is prohibited from making credibility determinations of the facts asserted in the complaint. *Cohan v. Bonita Resort & Club Ass'n, Inc.*, No. 2:15-CV-61-FTM-38DNF, 2015 WL 2093565, at *5 (M.D. Fla. May 5, 2015). The court is not free to disregard facts, nor may it dismiss a claim because it chooses not to believe those facts. "Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, (1989). See also, *Ashcroft v. Iqbal*, 556 U.S. 662, 696, (2009), *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 428 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015).

The authority to disregard asserted facts is delineated by a firm, bright-line rule. The trial court may not disregard facts asserted in the complaint unless they are of such fantastical quality as to defy reality as we know it, such as claims of time travel or encounters with space aliens or recent trips to Pluto. *Iqbal*, 556 U.S. at 696.

Throughout the Report, the basis for recommending dismissal is explicitly linked to credibility determinations–the court is "not persuaded," certain facts are "not persuasive," or facts are "not credible."

The Report's conclusions are without doubt based upon its weighing of factual allegations and credibility, as explained by the Eighth Circuit:

> In his memorandum opinion dismissing the complaint, the district judge observed that Stephens had failed to provide "facts" that would indicate estoppel should apply and that Stephens failed to convince the court that ADG "in fact engaged in improper activities". The district judge further made a credibility finding when he noted that he found "it difficult to believe" Stephens was intimidated for three years. A finding of "no improper activities" might be proper on a summary judgment motion where undisputed evidence is developed and a credibility determination might apply after a bench trial on the merits, but such findings are not appropriate on a motion to dismiss where the court is bound to accept as true, for purposes of the motion, the facts alleged by the plaintiff.

*Stephens v. Associated Dry Goods Corp.*, 805 F.2d 812, 814 (8th Cir. 1986).

This is well establish law.  *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 922 (11th Cir. 2008)(district court erred when it "indulged in considering matters outside the pleadings as well as deciding disputed issues of fact and making credibility determinations."), *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)("When reviewing a motion to dismiss, the court should not weigh the evidence or evaluate the credibility of witnesses."),  *Gibson v. Thurman*, 2009 WL 2579656, *2 (E.D. Tenn. Aug. 17, 2009)("It is not the court's duty to weigh evidence or evaluate a witnesses' credibility.")

This has been recognized by the Middle District of Florida repeatedly.  *Sapssov v. Health Mgmt. Associates, Inc.*, 22 F. Supp. 3d 1210, 1226 (M.D. Fla. 2014), aff'd, 608 F. App'x 855 (11th Cir. 2015)("The Court is required to accept the factual allegations in a complaint as true when

considering a motion to dismiss, and is unable to make the credibility determinations defendants urge."), *Trussell v. Quest Diagnostics Inc.*, 2010 WL 1223890, at *2 (M.D. Fla. Mar. 24, 2010)("It is not this Court's role to make credibility determinations on a motion to dismiss. Thus, upon due consideration, the Court denies the motion to dismiss.") *Traffic Jam Events, LLC v. Cortes*, 2009 WL 1043977, at *2 (M.D. Fla. Apr. 17, 2009)("Traffic Jam is correct that Defendants generally misinterpret the standard for dismissing a pleading in federal court. For instance, a party's "credibility" is not considered at this stage, and there is no requirement to attach certain documents to the complaint or to plead the details of a loan agreement.")

Despite this, the Report makes specific admissions of weighing the allegations of the complaint and makes the choice to disregard them or disbelieve them, specifically for lack of purported credibility.  The Report makes no citation to any authority permitting it to disregard facts, absent clear indications of demonstrable irrationality as defined by the Supreme Court.  The facts asserted do not meet that extremely high standard for disregarding or disbelieving facts simply because the court is "not persuaded" and doing so is an unambiguous breach of federal rule.

It is also a breach to weigh the facts asserted in the complaint against the arguments of defendants in motions to dismiss.  As the trial court is required to accept the factual allegations as true, it is prohibited from favoring the alternative facts or hypotheticals suggested by defendants, which this Court has previously recognized:

> Defendants argue that the Government "might have awarded [the] contracts for reasons besides [their] extortive acts." However, to reach this conclusion would require the Court both to weigh the facts and to weigh them in favor of the Defendants. The Court obviously can do neither in reviewing a motion to dismiss

*Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1368 (M.D. Fla. 2005).

-46-

See also, *Grande Vill. LLC v. CIBC Inc.*, No. CIV. 14 3495 NLH/JS, 2015 WL 1004236,

at *7-8 (D.N.J. Mar. 6, 2015):

> Although defendants offer explanations for their decisions during the budget review process, the purpose of a motion to dismiss is not for the Court to weigh evidence but for the Court to determine whether the plaintiff has pleaded enough facts to suggest each element of their claim and whether they are entitled to pursue evidence in support of their claim. Further, the facts are viewed in the light most favorable to the plaintiff, not the defendant.
> Accordingly, defendants' motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing will be denied.

By deliberately choosing to accept the arguments of Defendants in their motions to dismiss,

the Report commits clear error.


18.  <u>The Report's gratuitous references to the amount of time which has passed inaccurately represent the course of litigation</u>

As part of the discussion on why the above claims should be dismissed with prejudice, the

Report notes at various points that given the amount of time Plaintiffs have had to develop their case,

it is unlikely they will be able to ever do so and thus recommends dismissal with prejudice. This is

an inaccurate representation for several reasons.

In March, 2015, all Plaintiffs in MDL 2557 filed a motion to stay action on all cases pending

resolution of the motions to dismiss which were then fully briefed pursuant to the motions

instructions given by the Court on September 11, 2014. The motion was denied.

However, the Court clearly stated that each case was sufficiently dissimilar, particularly as

to matters of state law, that a ruling in one case did not signify an identical ruling would be

forthcoming in other cases and so each case should await independent review. See Order, Doc. No.

175 of MDL Docket No. 6:14- md-2557, dated April 3, 2015.

The Plaintiffs took the Court at its word and proceeded individually.

The complaint at issue has been amended for content only once.  While titled Second Amended Complaint, the first amendment was solely to add parties and was done prior to any directions of the court to address purported deficiencies in pleading.  The current complaint was filed on May 20, 2015.

Between June 8 and July 16, 2015, motions to dismiss, responses to those motions and replies were filed. As of July 16, 2015, no additional briefing was permitted on the motions and they were therefore fully briefed per the mandates issued to parties on September 11, 2014. On August 18, 2015, the Court set the matter for hearing, rescheduled the hearing on August 24, 2015, then cancelled the hearing on August 25, 2016.

The amount of time which has passed since the amended complaint was filed, ten months, has been dedicated to motion practice and awaiting the Court's decision, in direct compliance with the Court's April 3, 2015, order.

The Report seeks to dismiss the complaint, in part, based upon that very compliance. The Report is also rather misleading on this point. The Plaintiffs were directed to amend the complaint and did so in compliance with the directions provided. That no amendment was filed during the pendency of the motions to dismiss is not indicative of lack of diligence in additional development of the case and the Court is fully aware of that. While complying with the order to await the Court's decisions, the Plaintiffs have continued working on all aspects of the case, which led to, among other things, the direct admissions of price fixing and intentional misrepresentation of the "market rate."

Because of the timing of the admissions, they were not included in several of the amended complaints (since they did not exist at that time) but certainly represent Plaintiffs' dedication to

continuing investigation and fact gathering during the interim the Court was considering the motions to dismiss.

Since the Court ordered the Plaintiffs not make assumptions regarding the outcome of individual cases, the Plaintiffs justifiably awaiting the individualized handling the Court advised was forthcoming. Plaintiffs submit their fidelity to the directions of the Court should not be used as a basis for assuming dismissal with prejudice is appropriate, particularly where, as here, the bulk of the time interval was spent awaiting the Court's ruling.

19.   <u>Legal Authority</u>

In the event the Court determines to adopt the Report and Recommendation, for purposes of creating a clear record, the Plaintiffs respectfully request the Court provide the following:

- Identification of Utah authority overruling or modifying the holdings of *Emergency Physicians Integrated Care v. Salt Lake County*, 167 P.3d 1080 (Utah, 2007) and *Benchmark Const. LLC v. Auto-Owners Ins. Co.*, 2013 WL 3479682 (D. Utah July 10, 2013);

- Identification of Utah authority providing a direct request for services from a defendant is an element of a quantum meruit claim under Utah law;

- Identification of Utah authority identifying negotiation as a prerequisite to a claim for quantum meruit;

- Identification of Utah authority holding possible alternative actions precludes claims for quantum meruit;

- Identification of Utah authority requiring identification in the complaint of specific individuals with whom a defendant interfered for a cognizable claim of tortious interference with business prospects may lie;

- Identification of Utah authority holding partial payment of a debt for services extinguishes all legal rights to seek payment of outstanding balance due;

- Identification of Utah authority holding a defendants' unilateral course of conduct defeats a quantum meruit claim as a matter of law;

-49-

- Identification of Utah authority holding a defendants' unilateral course of conduct executed by coercion and/or duress defeats a quantum meruit claim as a matter of law;

- Identification of Utah authority holding determination of reasonable value of services is a question of law, not fact;

- Identification of Utah authority holding determination of reasonable value is a question of law the court may make prior to discovery and submission of evidence of value;

- Identification of Utah authority holding the existence or conferral of a benefit is a question of law the court may determine from the contents of a complaint;

- Identification of Utah authority holding unilateral conduct by a defendant constitutes an affirmative act of waiver of legal rights and/or creates an estoppel;

- Identification of Utah authority which permits a court to sua sponte determine the existence of a contract in direct contradiction of the allegations of the complaint, in the absence of production of any document purporting to be a contract, and without knowledge of any of the purported terms of the document the court purports to identify as a contract or assurances of intent to contract by the Plaintiffs;

- Identification of federal authority holding a plaintiff asserting claims under Rule 8(b) notice pleading must set out the specifics of each unpaid or underpaid claim;

- Identification of federal authority permitting a district court to make credibility determinations of a complaint's allegations where the allegations do not impeach the every day reality standard mandated by the Supreme Court in *Iqbal,* e.g., "claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.";

- Identification of federal authority providing a court may infer the existence of shotgun pleading in the absence of any incorporation by reference and render dismissal based upon that inference;

- Identification of federal authority permitting a court to dismiss claims based upon application of an affirmative defense(s) that are contradicted by the allegations of the complaint;

- Identification of federal authority permitting a court to affirmatively adopt the arguments of defendants set forth in motions to dismiss when the allegations of the complaint directly contradict those arguments.

Based upon the authority set forth above, Plaintiffs respectfully object to the Report and Recommendation issued in this cause, Doc. No. 107.

Respectfully submitted, this the 8th day of April, 2016.

**BREWER BODY SHOP, LLC, et al**

**BY:**      /s/ Allison P. Fry
John Arthur Eaves, Jr.
Allison P. Fry

Attorneys for the Plaintiff

John Arthur Eaves,
Attorneys at Law
101 N. State Street
Jackson, MS 39201
Telephone:     601.355.7961
Facsimile:     601.355.0530
allison@eaveslaw.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Plaintiff's Objections to Magistrate's Report and Recommendation has been served electronically via the ECF system  all counsel of record registered to receive notice.

/s/ Allison P. Fry

The Court is required to accept the factual allegations of the complaint as true, absent clear indications of irrationality.  Plaintiffs are not required to present a set of facts that is more compelling than the alternatives presented in motions to dismiss.  A plaintiff need only present allegations which, taken as true, present a plausible basis for liability, even if those allegations strike a court as unlikely to ultimately prevail.  *Twombly*, 550 U.S. at 556.

As the Utah Supreme Court pointed out, quantum meruit is an equitable tool that allows a plaintiff to receive restitution for the reasonable value of services provided to the defendant.  *Id.* at 1083.  The first element of quantum meruit requires the measurement of the benefit conferred on the defendant by the plaintiff.  *Id.* at 1086.

There are thus two factual issues which must be determined–the reasonable value of Plaintiffs' services and the measurement of the benefit conferred.