**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ALPINE STRAIGHTENING SYSTEMS, *et al.*,

                    Plaintiffs,

v.

STATE FARM MUTUAL AUTO INSURANCE COMPANY, *et al.*,

                    Defendants.

**Case No. 6:14-MD-2557-Orl-31TBS**

**RE: No. 6:14-CV-06003-GAP-TBS**

**GEICO GENERAL INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION**

In his March 25, 2016 Report and Recommendation ("R&R"), Judge Smith correctly determined that Plaintiffs' *quantum meruit*, tortious interference and conversion claims against GEICO General Insurance Company ("GEICO") must be dismissed with prejudice for failure to state claims upon which relief could be granted. *See* Doc. 127. Plaintiffs' over-length Objections to Magistrate's Report and Recommendation ("Objection") provides no basis for the Court to reject any of Judge Smith's recommendations. *See* Doc. 131.[1] The R&R correctly stated and applied the standard of review for testing the sufficiency of the allegations of the SAC. Plaintiffs' Objection misunderstands the standard, misstates the R&R's recommendations, misapplies the doctrine of law of the case and improperly demands the Court conduct legal research for Plaintiffs and answer Plaintiffs' questions. The Court should overrule Plaintiffs' Objection and adopt the R&R, except as stated in GEICO's Partial Objection to Report and Recommendation and Joinder in Farmers' Limited Objection (Doc. 130, "GEICO's Partial Objection") and the objection it joins.

Judge Smith correctly determined that Plaintiffs do not allege facts plausibly suggesting Plaintiffs conferred a benefit on GEICO or that the retention of any alleged benefit would be unjust, thus failing to establish several *prima facie* elements of their *quantum meruit* claims. Judge Smith also rightly concluded that the *quantum meruit* claims fail because the SAC is a group and shotgun pleading. Plaintiffs' Objection identifies no facts correcting these deficiencies or otherwise supporting their *quantum meruit* claims against GEICO.

Judge Smith also correctly determined Plaintiffs failed to establish *prima facie* elements of their tortious interference claims, such as improper means or damages. He also concluded that Plaintiffs' tortious interference claims suffer the same shotgun and group pleading that renders their *quantum meruit* claims implausible and improperly pled. *See* R&R at 15-16 (*citing to*

---

[1] Plaintiffs' Objection is at least twice as long as permitted by Local Rule 3.01 and Plaintiffs did not seek leave to exceed the page limitation, as required by Local Rule 3.01(d). *See* L.R. 3.01(a) (a motion or other application for an order may not be "more than twenty-five (25) pages); *see also United States v. Harling*, No. 2:13-CR-96-FTM-38CM, 2014 WL 2805272, at *1 (M.D. Fla. June 20, 2014) (stating that L.R. 3.01(b) applies to objections to report and recommendations). The Court should not consider Plaintiffs' Objection when deciding whether to adopt the R&R's recommendations. *See Harling*, 2014 WL 2805272, at *1 ("Ordinarily a document of that length [52 pages] filed without leave to exceed the page limit would be stricken by the Court without further notice . . . .").

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009))." Plaintiffs' Objection identifies no alleged facts correcting these deficiencies or plausibly suggesting GEICO is liable for tortious interference. Judge Smith was correct to recommend dismissal of these claims with prejudice.[2]

For the reasons stated in Judge Smith's R&R, in GEICO's Motion to Dismiss and below, GEICO requests that the Court adopt the R&R, except as stated in GEICO's Partial Objection.

I. **JUDGE SMITH CORRECTLY RECOMMENDED DISMISSAL OF PLAINTIFFS'** *QUANTUM MERUIT* **CLAIMS AGAINST GEICO**

    A. **Plaintiffs Concede They Alleged They Have Contracts With Their Customers – The** *Quantum Meruit* **Claims Should Be Dismissed As Stated In GEICO'S Partial Objection**

As GEICO's Partial Objection explained, the R&R correctly concluded a *quantum meruit* claim cannot proceed in Utah where there is an enforceable contract. Doc. 130 at 1 (citing R&R at 8-9). Plaintiffs did not object to the R&R's conclusion that the existence of a contract would be fatal to Plaintiffs' claims. *See* Objection at 28-32 (objecting only to the R&R's conclusion that the contract is between Plaintiffs and Defendants).

Instead, Plaintiffs' Objection affirmatively argues that Plaintiffs alleged they have contracts with their customers covering the subject matter of their *quantum meruit* claims. Objection at 24 ("Consumers enter agreements with the Plaintiffs for the repair of vehicles. The Defendant insurers enter agreements with their respective insureds to pay for repairs . . . ."). Utah courts have held that a plaintiff may not maintain a *quantum meruit* claim against a non-party to a contract where the plaintiff has not exhausted its legal remedies under the contract. *Knight v. Post*, 748 P.2d 1097, 1099-1100 (Utah Ct. App. 1988) ("As a general rule, one must first exhaust his legal remedies before he may recover on the basis of the equitable doctrine of quantum meruit."); Doc. 130 at 2; R&R at 8 & n.1 (noting that GEICO's Motion to Dismiss was unopposed on this point). Plaintiffs have written agreements governing the very subject matter

---

[2] Judge Smith also recommended dismissal of Plaintiffs' conversion claims against GEICO because "the SAC is identical to the claim in the amended complaint which the Court found insufficient to state a cause of action." R&R at 16 (citing Doc. 13 (FAC) ¶¶ 120-23; Doc. 102 (SAC) ¶¶ 377-80). Plaintiffs did not object to Judge Smith's recommendation to dismiss these claims with prejudice. *See* Objection. The Court should adopt Judge Smith's unchallenged recommendation.

of their *quantum meruit* claims and have not alleged facts plausibly suggesting they have exhausted their remedies under their agreements with their customers. If Plaintiffs believe they were underpaid for their services, they have a contractual remedy that Utah law requires them to pursue before pursuing an equitable claim. Because Plaintiffs have not done so, their *quantum meruit* claims must be dismissed.

### B. Judge Smith Correctly Held That Plaintiffs' *Quantum Meruit* Claim Fails Because It Is A Group And Shotgun Pleading

Plaintiffs' *quantum meruit* claims are improperly group and shotgun pled. The SAC does not provide Defendants notice of who allegedly owes which Plaintiffs for what, and appears to indicate every Defendant owes every Plaintiff for each repair every Plaintiff performed. *See* SAC ¶ 369 (stating generally "it would be unjust for Defendants not to pay quantum meruit damages . . . without paying all the amounts that it costs shops to restore insureds vehicles to safe pre-accident conditions"); *see also Yeyille v. Miami Dade Cty. Pub. Sch.*, No. 15-13053, 2016 WL 692050, at *1 (11th Cir. Feb. 22, 2016) (discussing and condemning different types of shotgun pleadings). Judge Smith correctly stated that the *quantum meruit* claims fail because they are impermissible shotgun and group pleading. *See* R&R at 9-10.

### C. Judge Smith Correctly Held That Plaintiffs Did Not Allege Facts Plausibly Suggesting They Conferred A Benefit On Defendants

The R&R concluded that "[t]he SAC . . . does not allege that Plaintiffs conferred a benefit on Defendants." R&R at 5. As Judge Smith explained, "Plaintiffs do not allege that Defendants have an obligation to repair their insureds' vehicles[;] [i]nstead, . . . Defendants are obligated to pay the cost to restore damaged vehicles to their safe pre-accident conditions" and incurring an obligation to pay is not a benefit. R&R at 6-7 (citing Doc. 102 at ¶ 360 and *A&E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, No. 6:14-cv-310-Orl-31TBS, 2015 WL 304048, at *5 (M.D. Fla. Jan. 21, 2015)).

Plaintiffs argue that the R&R is wrong and this case is analogous to *Emergency Physicians Integrated Care v. Salt Lake County* ("*EPIC*"). Objection at 5-6 (citing *EPIC*, 167 P.3d 1080 (Utah 2007)). As the Utah Supreme Court has clarified that *quantum meruit* does not

-3-

apply when the primary relationship is not between the plaintiff and defendant, limiting *EPIC* in a case Plaintiffs did not cite, Plaintiffs are wrong even had *EPIC* supported their position.[3] *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1018-20 (Utah 2015).[4]

In *Jones*, an attorney who had contracted with a law firm to perform work on certain cases sued the firm and certain firm partners in *quantum meruit* for the value of those services. 355 P.3d at 1004-05. The Utah Supreme Court affirmed the dismissal of the claims against the partners because, although they benefitted from the plaintiff's work, the benefit was incidental, not direct, and the primary relationship was between the plaintiff and the law firm, not the partners. *Id.* at 1019; *see also id.* at 1018 ("A defendant is liable under the unjust enrichment prong of quantum meruit only if he or she received a direct benefit from the plaintiff. In other words, 'unjust enrichment does not result if the defendant has received only an incidental benefit from the plaintiff's service[s].'") (quoting *EPIC*, 167 P.3d at 1086) (alteration in original). In discussing *EPIC*, the Utah Supreme Court noted that Salt Lake County had a duty to provide the medical services and, if the physicians had not done so, "the County would have had to provide these services by other means." *Id.*

Here, Plaintiffs argue and allege that the primary relationship is between Plaintiffs and their customers. *See, e.g.*, Objection at 24 (arguing Plaintiffs enter agreements with consumer for repairs); SAC ¶ 34. Just as in *Jones*, Plaintiffs here identify no statutory, constitutional or contractual obligation for the Defendants to perform the repairs Plaintiffs allege they performed. *See* Objection at 4-13. Instead, Plaintiffs implausibly assert that they are the means by which

---

[3] GEICO's Partial Objection to Certain Dicta in Magistrate Judge's Report and Recommendation discussed *EPIC* in detail and explained why its holding does not apply to Plaintiffs' claims. *See* Doc. 96. The reasoning in that Partial Objection applies equally here and GEICO incorporates it.

[4] Plaintiffs also misstate the issues and holding in *EPIC* to support their "partial payment" argument. Objection at 14. Whether retention of a benefit would be unjust and whether partial payment can be a defense to a *quantum meruit* claim were not at issue in *EPIC*. *See* 167 P.3d at 1083 (identifying the only issue before the court: whether the physicians conferred a benefit on the County). The other cases Plaintiffs cited for this point demonstrate that, for the retention of a benefit to be considered unjust, a reasonable expectation of additional payment is necessary to support a *quantum meruit* claim where partial payment was made. *See Bennett Leasing Co. v. Ellison*, 387 P.2d 246, 248 (Utah 1963) (the terms of an unenforceable contract between the parties properly provided the basis for the reasonable value of goods provided beyond amounts already paid); *Parrish v. Tahtaras*, 318 P.2d 642, 643-46 (Utah 1957) (same); *Morris v. Russell*, 236 P.2d 451, 453-57 (Utah 1951) (plaintiff could recover additional wages where he was told he would receive higher pay but the defendant did not pay it); *see also* Objection at 15 (citing *Bennett*, *Parrish* and *Morris*).

Defendants pay their claimants. *See* Objection at 13 (citing SAC ¶¶ 360-61 for the proposition that Plaintiffs serve as the means through which Defendants incur their obligation to pay for repairs). As this Court has already held, "[t]he repairs at issue obviously provided a benefit to the owners of the vehicles[,] [b]ut so far as the [SAC] discloses, the only effect of such a repair on the insurance company is the incurring of an obligation to pay for it." R&R at 7 (citing *A&E Auto Body, Inc.*, No. 6:14-cv-310-Orl-31TBS, 2015 WL 304048, at *5). Plaintiffs also allege the Defendants would have incurred the obligation to pay exactly the same amount the Defendants allegedly paid the Plaintiffs no matter where the repairs were performed. *See* SAC ¶¶ 256-57 (alleging that the outcome is the same no matter where a vehicle is repaired). Unlike *EPIC*, if the Plaintiffs did not perform the services, the Defendants would have allegedly incurred the exact same obligation that they would have satisfied in exactly the same way, they would not "have had to provide these services by other means." *Id.* To the extent incurring an obligation to pay could be considered a benefit, as in *Jones*, it is merely incidental to the primary benefit Plaintiffs allege they directly conferred on their customers.[5]

*Jones* also held that, where a third person benefits from a contract between two others (such as Plaintiffs here allege), that person may be liable if the person requested the services. 355 P.3d at 1020 (quoting *Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977)). The R&R did not create a new element of a *quantum meruit* claim in its discussion of request. *See* R&R at 6; Objection at 9-10 (arguing the R&R created a new element). Rather, consistent with Utah law, the R&R suggested that, had a Defendant requested repairs, Plaintiffs may have been able to rely on the request to support a claim that they had conferred a benefit on the Defendant. Plaintiffs' "request" argument concedes Plaintiffs'

---

[5] Plaintiffs' reliance on *Benchmark Construction, LLC v. Auto-Owners Insurance Company*, 2:12-CV-00762, 2013 WL 3479682 (D. Utah July 10, 2013) is misplaced. *Jones* has effectively overruled Plaintiffs' interpretations of the holdings in *EPIC* and *Benchmark*. Even if *Jones* was not controlling precedent, *Benchmark* still would not support Plaintiffs' position. The *Benchmark* plaintiff, a subcontractor, performed work on a store that had been damaged by flooding after both the general contractor who hired the plaintiff and the insurer for the property represented that the insurer would pay the plaintiff for the work. 2:12-CV-00762, 2013 WL 3479682, at *1. Although the insurer told the plaintiff it would pay if the plaintiff provided a few more documents, the insurer never paid. *Id.* The Defendants are not alleged to have done nothing here; rather, Plaintiffs allege the Defendants told Plaintiffs the amount they are willing to pay for Plaintiffs' services, which is the same amount the Defendants would pay if Plaintiffs declined to perform the services, and paid for their services. *See infra* Section I.D.

customers, not Defendants, request their services. Objection at 8. The R&R correctly concluded that "Plaintiffs fail to allege that repairs are done at Defendants' request." R&R at 6.[6]

### D. Judge Smith Correctly Held That Plaintiffs Did Not Allege Facts Plausibly Suggesting Defendants' Retention Of An Alleged Benefit Is Unjust

Judge Smith recommended dismissal of Plaintiffs' *quantum meruit* claims because Plaintiffs did not allege facts plausibly suggesting Defendants' retention of any purported benefit was unjust. *See* R&R at 7-8. As Judge Smith reasoned, "[g]iven the parties' history, Plaintiffs could not, under any level of reasonableness, have expected to be paid more than what they received." R&R at 8. Judge Smith also held that Plaintiffs' SAC "generally alleges an established, ongoing course of business" comprising an estimate, approval of the estimate, a Plaintiff making repairs, and a Defendant paying for the repairs. R&R at 8-9. There is nothing remotely wrong with Judge Smith's reasoning or conclusion.

Plaintiffs could not have reasonably expected to be paid more for their services because they agreed to perform the repairs at certain prices and knew that GEICO had always refused to pay more. *See* SAC ¶ 100 ("Defendant insurers compel acceptance of a fixed pricing structure"); ¶ 107 ("Defendants . . . simply refuse to pay more for parts than the cheapest a part can be purchased"); ¶ 131 (Defendants pay no more than the "market rate"). Plaintiffs allege that before they performed each repair, the Defendants preserved their rights and approved the work. SAC ¶ 363 ("Defendants purport to reserve the unilateral right to grant permission to Plaintiffs to commence work until such time and place deemed appropriate . . . [and] Defendants assert entitlement to certain rights and privileges in advance of Plaintiffs commencing work."). Where GEICO is mentioned, Plaintiffs allege GEICO obtains its own estimate before work is performed. *See* SAC ¶ 232.

The allegations in Plaintiffs' SAC do not plausibly suggest retention of a purported

---

[6] Plaintiffs' argument that the R&R conflicts with the Utah Administrative Code is nonsense. *See* Objection at 9-10. Plaintiffs do not explain how the regulation has any relation to Utah's common law regarding *quantum meruit*. *See id.* Nor do they explain how prohibiting an insurer from requiring a claimant "to use only the insurer's claim service in order to perfect a claim" (as stated by the regulation) "prohibits an insurer from making payment of a claim contingent upon use of an insurer-specified or approved body shop." Utah Admin. Code r. R590-190-12(5); Objection at 9. Plaintiffs' argument is particularly nonsensical in the face of regulations that specifically permit insurers to require a claimant to use a specific repair shop. *See* Utah Admin. Code r. R590-190-11(4), (8).

benefit was unjust because Plaintiffs did not have a reasonable expectation of payment beyond the amount GEICO told each Plaintiff it would pay. *See* R&R at 7-8. Plaintiffs cite no allegations in their SAC plausibly suggesting they had a reasonable expectation of additional payment. Instead, Plaintiffs argue that "[p]artial payment and a course of conduct of unilateral refusal to make full payment does not extinguish a quantum meruit claim." *See* Objection at 14-15. This argument misses the point.

Plaintiffs' affirmative defenses argument is equally meritless. *See* Objection at 17-21. As Judge Smith observed, "[q]uantum meruit is not available to secure a better bargain for Plaintiffs than the amounts they agreed to when they accepted the work." R&R at 8. Plaintiffs, therefore, must allege enough factual matter to suggest that "Defendants' retention of the benefit is unjust in the absence of additional compensation." R&R at 7-8; *see also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007). The R&R held that Plaintiffs failed to allege plausible facts supporting an element of their claims; it did not rely on any affirmative defense.[7]

Notwithstanding Plaintiffs' argument to the contrary, the R&R also did not state that negotiation of higher prices or entering into a contract are necessary elements of a *quantum meruit* claim. *See* Objection at 21-25. Instead, the R&R identified that, because Plaintiffs have choices, such as negotiating higher prices, entering into a contract or refusing to perform repairs at the known rates, retention of any purported benefit could not have been unjust. *See* R&R at 8.[8] Plaintiffs did not allege facts plausibly suggesting they were forced or legally obligated to perform repairs, but instead concede they could have refused to perform repairs. *See, e.g.*,

---

[7] As the court in *Boldstar Technical, LLC v. Home Depot, Inc.* stated, "an affirmative defense is established only when the defendant admits facts contained in the complaint, but sets up other facts in justification or avoidance." 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007). Judge Smith did not rely upon "other facts" to conclude that Plaintiffs had not alleged facts to support the *prima facie* elements of their *quantum meruit* claims. *See* R&R at 5-9. As discussed above, the absence of Plaintiffs' reasonable expectation of additional payment is found in the SAC. Assuming *arguendo* the Court had to rely upon an affirmative defense to excuse GEICO's conduct (*i.e.*, telling Plaintiffs how much it would pay and then paying that amount), the Court may do so if the facts appear in the SAC. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint.").

[8] Plaintiffs' claim that they can set their own prices is irrelevant. *See* Objection 21-22. Plaintiffs can set whatever price they want to, but their setting of a price does not mean the market (or any Defendant) will be willing to pay that price or has to pay that price.

Objection at 22-23. Plaintiffs instead argue that if they did not accept the price a Defendant stated it would pay, they could not perform the work (and get paid for it). *Id.* at 22-23, 29-30.

Such an economic coercion argument is "nonsensical." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-CV-06016-GAP-TBS, 2015 WL 7568213, at *5 (M.D. Fla. Nov. 25, 2015) ("The Plaintiffs are arguing (1) that what they feared losing was not money but the ability to perform repairs on insured vehicles, and (2) that receiving compensation paid by insurance companies was not the benefit they received but rather the burden they shouldered to be able to continue performing repairs on insured vehicles. In actuality, the Plaintiffs admit throughout the Amended Complaint that they accepted what they believed to be suppressed compensation because if they refused to work that cheaply, some other repair shop would get the work. This is not the sort of fear of economic loss that can support an extortion claim.") (footnote omitted). Judge Smith is correct that Plaintiffs' alleged ability to negotiate or refuse to perform the work supports the finding that Plaintiffs' SAC does not allege facts plausibly suggesting Plaintiffs had a reasonable expectation of payment over the amounts they received from Defendants.

Because Plaintiffs did not allege facts plausibly suggesting any Defendant's retention of a purported benefit was unjust, Plaintiffs' discussion of the reasonable value of their services is inapposite. Objection at 26-27. Plaintiffs are attempting to confuse the requirement that, as part of their *prima facie* case, they must allege facts plausibly suggesting a defendant's retention of a benefit was unjust (which they failed to do), with the question of the appropriate remedy once a defendant has been held liable under a *quantum meruit* theory. *Id.* The plaintiffs in the cases Plaintiffs cited all demonstrated they had a reasonable expectation of payment before reaching the question of the reasonable value of services. *See The Poznan*, 274 U.S. 117, 118, 123 (1927) (reasonable value question for jury after determination made that owner was entitled to preferential payment); *Jones,* 355 P.3d at 1019 (holding plaintiff stated a *quantum meruit* claim and remanding to determine damages); *Hatch v. Sugarhouse Fin. Co.*, 434 P.2d 758, 759 (Utah 1967) (defendants only disputed reasonable value of services); *Foulger v. McGrath*, 95 P. 1004,

-8-

1005 (Utah 1908) (trial to determine reasonable value of services after plaintiff stated a claim);[9] Objection at 26-27 (citing *Posnan*, *Jones*, *Hatch*, *Foulger* and *Evans*).

### E. The Law Of The Case Does Not Apply And Judge Smith Did Not Violate It

Plaintiffs claim that because the Court dismissed the *quantum meruit* claims in the FAC solely due to the alleged existence of contracts, Judge Smith's R&R, which "raises a host of purported pleading deficiencies" now violates the law of the case doctrine. *See* Objection at 2-4. Plaintiffs are wrong.

Even if the R&R and Order (Doc. 101) are inconsistent (they are not), the law of the case doctrine does **not** apply. "Ordinarily [the] law of the case applies only where there has been a final judgment and not to interlocutory rulings." *Gregg v. U.S. Indus., Inc.*, 715 F.2d 1522, 1530 (11th Cir.) *decision clarified on reh'g sub nom. Gregg v. U.S. Indus., Inc. (Two Cases)*, 721 F.2d 345 (11th Cir. 1983) (directed verdict ordered before mistrial by one judge did not bind the judge to whom the case was assigned for a new trial); *see also U.S. v. U.S. Smelting Ref. & Min. Co.*, 339 U.S. 186, 199 (1950) (holding "it requires a final judgment to sustain the application of the rule of the law of the case" and the "'law of the case' is only a discretionary rule of practice"). The Order was an interlocutory ruling, so "law of the case" does not apply.[10] The SAC also has different allegations than the FAC and the Court has **not** previously decided whether the SAC's allegations are plausible. *Compare* Doc. 13 (FAC) *with* Doc. 102 (SAC); *see also U.S. Smelting*, 339 U.S. at 198 ("The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter.").

The R&R does not conflict with the Order. Plaintiffs cite no case that requires a court to identify every deficiency a complaint suffers when dismissing it without prejudice, because no

---

[9] *In re Evans*, 130 P. 217 (Utah 1913), is an attorney regulation, not a *quantum meruit*, case. *Evans* comments about the attorneys' conduct in the context of their disbarment proceedings, including potential *quantum meruit* and contract claims that could have been brought, but it does not stand for any rule of law regarding *quantum meruit* and has never been cited in the *quantum meruit* context.

[10] The cases Plaintiffs cited in support of their "law of the case" argument are inapposite because they involved appealable orders, not pleadings dismissed without prejudice that were later re-pled. *See Royal Ins. Co. v. Latin Am. Aviation Services, Inc.*, 210 F.3d 1348, 1350 (11th Cir. 2000) (initial determination made during bench trial regarding definition of a specific term); *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (initial determination made during lower court ruling that was not challenged on appeal).

such case exists.  *See* Objection at 2-4.  The only purported inconsistency Plaintiffs identify is the Court's determination regarding whether Plaintiffs' conferred a benefit on Defendants.  *Id.*  The Order, however, did not "decide[] Plaintiffs' services confer a benefit to Defendants under Utah state law, as Plaintiffs' claim.  *See id.*; Order at 1, n.2.  Instead, the Order explicitly deferred resolution of the issue until it is necessary to decide it.  Order at 1, n.2.  The R&R cannot conflict with a holding this Court did not make.[11]

### F. Judge Smith's Recommendation To Dismiss Each Plaintiffs' *Quantum Meruit* Claim Against GEICO Was Correct

Plaintiffs' general pleading is not permitted by Rule 8 or *Iqbal*/*Twombly* and Judge Smith was correct to recommend dismissal of these generally alleged claims.  Plaintiffs have not corrected fundamental deficiencies this Court has repeatedly identified with their claims.  The Court should adopt Judge Smith's recommendation and dismiss Plaintiffs' *quantum meruit* claims with prejudice.

## II. JUDGE SMITH CORRECTLY RECOMMENDED DISMISSAL OF PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS AGAINST GEICO

### A. Plaintiffs Did Not Object To The Dismissal Of Their Tortious Interference Claims Where GEICO Customers Were Mentioned

Where GEICO is mentioned in the SAC, the R&R recommended dismissal of Plaintiffs' tortious interference claims for failure to allege facts supporting the elements of their claims. R&R at 13 (dismissing claims except for those specifically discussed because Plaintiffs did not allege damages).  Plaintiffs did not object to Judge Smith's recommendation to dismiss these claims with prejudice for failure to state a claim.  *See* Objection at 39-42 (discussing examples, but none allegedly involving GEICO).  The Court should adopt Judge Smith's unchallenged recommendation.

### B. Judge Smith Correctly Held That Plaintiffs May Not Base Their Tortious Interference Claims On Statutes For Which No Private Cause of Action Exists

Judge Smith correctly held that an alleged violation of a rule that explicitly prohibits a

---

[11] *See also* Order at 2 (putting Plaintiffs on notice of other deficiencies in their FAC by stating that the *quantum meruit* claim "is precluded for all of the same reasons expressed by this Court in the companion MDL cases from Florida . . . Mississippi . . . and Indiana . . . ").

private cause of action cannot be the "improper means" necessary to support their tortious interference claims. R&R at 11-12 (recommending that, to the extent Plaintiffs' tortious interference claims rely on UT ADC § 31A-26-303(1) and (4) and UT ADC R590-190-1 and R590-190-11(4), they should be dismissed because the legislature expressly precluded a private right of action for violation of the rules); *see also* Utah Code Ann. § 31A-26-303(5) ("This section does not create any private cause of action."); *Cannon v. Travelers Indem. Co.*, 994 P.2d 824, 828-29 (Utah Ct. App. 2000) (dismissing claim based on alleged violations of the Utah Unfair Claims Settlement Practices statutes and rules because no private cause of action).

Plaintiffs are wrong that "[e]ach case cited by the Report were instances where a plaintiff sought relief for a direct violation of the statute itself." Objection at 38. *Brockbank v. JPMorgan Chase Bank, N.A.* prohibited the plaintiff from bringing contract and tort actions to the extent they were based on the federal Home Affordable Modification Program ("HAMP") because "there is no private right of action under HAMP and . . . HAMP-based claims disguised as other claims, such as breach of contract, are not cognizable." 2:11CV671DAK, 2012 WL 1142933, at *3 (D. Utah Apr. 4, 2012). The plaintiffs in *Espinoza v. Gold Cross Services, Inc.* did not bring a direct action under HIPAA, relying on HIPAA's fee schedules to argue they may recover under the doctrine of unjust enrichment instead. 234 P.3d 156, 159 (Utah Ct. App. 2010) ("We have no basis in state or federal law to enforce federal regulations promulgated under HIPAA, either directly or as a component of a state cause of action."). Plaintiffs here cannot disguise an alleged statutory violation as a tortious interference claim.[12]

### C. Judge Smith Correctly Held That Plaintiffs Have Not Otherwise Alleged Improper Means

Judge Smith held that "in the absence of any improper means, an improper purpose is not grounds for tortious interference liability." R&R at 10 (citing to *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015)). The R&R was correct that Plaintiffs' dismissed antitrust claims cannot establish improper means. R&R at 13; *see also* Doc. 126 at 17. The R&R was also correct that

---

[12] Even if Plaintiffs could bring an action under Utah's Unfair Claims Settlement Practice Act (they cannot), Plaintiffs' Objection identifies no facts Plaintiffs alleged plausibly suggesting GEICO violated the regulation.

unsuccessful steering attempts do not constitute improper means because "Utah law requires actual damages resulting from the interference, and Plaintiffs have not alleged a cognizable injury in any situation where a Defendant tried but failed to steer someone away from one of Plaintiffs' businesses." R&R at 13 (citing *Eldridge*, 345 P.3d at 556). Plaintiffs' Objection did not argue that they have stated a claim, only that Judge Smith should have inferred facts supporting a claim. *See* Objection at 40 ("It is true, this and other examples do not specifically state the Plaintiff lost the customer due to a Defendant's interference."). Judge Smith is not required to fill in the missing pieces of Plaintiffs' allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

Contrary to Plaintiffs' contention, the R&R does not "suffer[] from inconsistency" as compared to the Report and Recommendation in *Brewer*. Objection at 41 (citing *Brewer Body Shop v. State Farm*, 6:14-cv-6002, Doc. 107 ("*Brewer* R&R") at 10-11). The *Brewer* R&R stated that because the SAC "alleges that Defendants do not guarantee repairs regardless of who does the work . . . . the statements by Nationwide and Liberty mutual that they would guarantee work performed by their preferred shops was misleading and false." *Brewer* R&R at 10. In contrast, the R&R here stated that "Farmers' statement that it would ***not*** warranty JP's Custom Paint and Body's work ***is not actionable since it appears to be true***." R&R at 14 (emphasis added). The statements between the R&R and the *Brewer* R&R are consistent. Even assuming there was an inconsistency, it would not matter because the two cases are separate and distinct and the two states have different tortious interference laws.

### D. Judge Smith Correctly Held That Plaintiffs' Tortious Interference Claim Fails Because It Is A Group And Shotgun Pleading

As with their *quantum meruit* claims, Plaintiffs' tortious interference claims are improperly group and shotgun pled.[13] The SAC does not provide Defendants notice of who

---

[13] Plaintiffs' claim that their SAC is not shotgun pled is incredible. *See* Objection at 42. Judge Smith's observations regarding shotgun pleading were spot on. *See* R&R at 15. Neither Plaintiffs' Response to GEICO's Motion to Dismiss nor their Objection reflects Plaintiffs' intention that their tortious interference claims rely only on

allegedly interfered with whom, what improper means were allegedly used, or what damages Plaintiffs allegedly incurred.  *See* SAC ¶ 376 (stating generally "Defendants are injuring the Plaintiffs . . . forcing the Plaintiffs to absorb collision repair costs and expenses of which the Defendants should be paying").  Judge Smith correctly stated that the tortious interference claims fail because they are impermissible shotgun and group pleading.  *See* R&R at 15-16.

Plaintiffs incorrectly state Judge Smith weighed the credibility of the facts asserted in the SAC.  *See* Objection at 44-47.  What Judge Smith found "not credible" (or, in other words, implausible) was Plaintiffs' group pleading and Plaintiffs' argument that "each and every Defendant in fact engaged in each and every wrongful conduct alleged against each and every Plaintiff."  *See* R&R at 15 (citing to Doc. 111 at 27).  Trial courts are permitted to weigh the credibility and *plausibility* of the parties' arguments in deciding whether allegations plausibly state a claim.  Plaintiffs' argument about credibility is irrelevant.

### E.  The Law Of The Case Does Not Apply And The R&R Did Not Violate It

Plaintiffs claim that because the Court dismissed the tortious interference claims in the FAC due to Plaintiffs' "failure to sufficiently identify which Defendants interfered with which Plaintiffs' business prospects," the R&R, which "alleges several additional purported problems with the [SAC]," violates the law of the case doctrine.  Objection at 35-37.  Plaintiffs are wrong.

As with the *quantum meruit* claims, even if the R&R and Order are inconsistent (they are not), the law of the case doctrine does *not* apply.  *See supra* § I.E.  The R&R does not conflict with the Order anyway.  The Order dismissed Plaintiffs' tortious interference claims because "the generalized, shotgun nature of the Plaintiffs' contentions does not satisfy the applicable pleading standard."  Order at 2.  The R&R recommends dismissal for the same reason: "[A] general allegation that some unidentified Defendants – or all Defendants – interfered with some unidentified customers of some unnamed Plaintiff does not satisfy the requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)."  R&R at 15-16 (citing Order at 2).

---

paragraphs 371-76 of their SAC.  Even if this is what they intended, the conclusory allegations of 371 through 376 say nothing about GEICO and do not meet the requirements of Rule 8, *Iqbal* and *Twombly*.

### III.  **PLAINTIFFS' DEMANDS ON THE COURT ARE IMPROPER**

Plaintiffs' Objection concludes with two pages of demands on the Court.  Objection at 49-51.  The Court has repeatedly identified the standard it must apply when testing the sufficiency of the allegations in Plaintiffs' complaint.  *See, e.g.*, Doc. 95; Doc.101; Doc. 127.  The standard does not require the Court to identify every problem with Plaintiffs' SAC, to clarify each of Plaintiffs' misstatements of law, to perform Plaintiffs' legal research, or to cure Plaintiffs' attorneys' inability to understand the standard or the Court's orders applying the standard to Plaintiffs' pleadings.  As with their FAC, the Court could simply dismiss Plaintiffs' *quantum meruit*, tortious interference and conversion claims because the SAC continues to be a prohibited shotgun and group pleading.  The Court should adopt the R&R, except as identified in GEICO's Partial Objection, and dismiss all of Plaintiffs' *quantum meruit*, tortious interference and conversion claims against GEICO with prejudice.

DATED this 28th day of April, 2016.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Dan. W. Goldfine*
Dan W. Goldfine
Joshua Grabel
Jamie L. Halavais
Ian M. Fischer
201 E. Washington Street, Suite 1200
Phoenix, Arizona  85004
Telephone: 602-262-5392
Facsimile:  602-262-5747
Email: dgoldfine@lrrc.com
   jgrabel@lrrc.com
   jhalavais@lrrc.com
   ifischer@lrrc.com

Attorneys for Defendant GEICO General Insurance Company

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 28th day of April, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

                                          */s/ Dan W. Goldfine*
                                          Dan W. Goldfine